Barbara STORDEUR, Plaintiff,

v.

COMPUTER ASSOCIATES INTER-
NATIONAL, INC. and Edward
Markowitz, Defendants.

No. 96–CV–4726(JS).

United States District Court,
E.D. New York.

Feb. 9, 1998.

Fran L. Rudich, Helene Mark, Thornton & Tanenhaus, New York City, for Barbara Stordeur.

Jerome P. Coleman, Frank W. Ryan, Nixon, Hargrave, Devans & Doyle L.L.P., New York City, for Computer Associates Intern., Inc.

Lisa Barse Bernstein, Seyfarth, Shaw, Fairweather & Geraldson, New York City, for Edward Markowitz.

### MEMORANDUM AND ORDER

SEYBERT, District Judge.

Pending before the Court are defendants' separate motions to dismiss certain causes of action in plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

### BACKGROUND

The following facts are set forth in plaintiff's complaint, and are therefore accepted as true in analyzing the defendants' motions to dismiss.

Plaintiff Barbara Stordeur alleges ongoing sexual harassment in the workplace during

the period April 1994 up and to March 1995. Specifically, plaintiff avers that she was employed by defendant Computer Associates International, Inc. (hereinafter "Computer Associates") commencing in or about March 1988 up and to March 1995. During that period, plaintiff was promoted from junior programmer to ultimately trade show coordinator in April 1994, at which point defendant Edward Markowitz became the plaintiff's supervisor.

Plaintiff alleges that while she was working in defendant Markowitz' department, she was subjected to (1) repeated improper comments about her sex life; (2) repeated comments about the "hot girls" in the office; (3) repeated offers to view and rub a co-worker's tatoo on his pelvis region; (4) a comment about a co-worker's penis; (5) a sexual proposition targeting her sister; and (6) numerous other offensive incidents. In addition, plaintiff alleges that defendant Computer Associates subjected all the female employees to a discriminatory work environment with diminished opportunities and less favorable assignments and working conditions, including requiring the females to work substantially longer hours. When Ms. Stordeur met with defendant Markowitz to discuss the discriminatory practices, Markowitz purportedly retaliated by threatening termination, ordering plaintiff to perform menial tasks outside her job assignment and verbally humiliating plaintiff in front of janitorial staff. Moreover, soon thereafter, Markowitz gave Stordeur an unsatisfactory job performance review. Based solely upon these discriminatory acts and the failure of defendants Markowitz and Computer Associates to undertake an investigation or to change the harassing behavior, Ms. Stordeur was forced to terminate her employment in March 1995.

On or about November 1, 1995, plaintiff filed a formal complaint with the Equal Employment Opportunity Commission (the "EEOC"), and received a Notice of Right to Sue letter on June 27, 1996.

### PROCEDURAL HISTORY

Plaintiff avers the following legal claims as against defendant Computer Associates (1) quid pro quo sexual harassment under Title VII; (2) hostile work environment sexual harassment under Title VII; (3) constructive termination under Title VII; (4) gender discrimination under Title VII; and (5) negligent hiring and supervision of defendant Markowitz and negligent investigation of plaintiff's claims.

Plaintiff avers the following legal claims as against both defendants Computer Associates and Markowitz: (1) gender discrimination and retaliation under New York Executive Law §§ 296.1, 296.6, and 296.7, the New York Human Rights law; (2) intentional and reckless infliction of extreme emotional distress; (3) slander and slander per se. Finally, plaintiff requests damages in an amount totaling $13,000,000.00, to be decided by a jury.

Defendant Computer Associates moves to dismiss certain of plaintiff's claims on the grounds that those causes of action fail to state a claim upon which relief can be granted; specifically Stordeur's claim for: (1) intentional and reckless infliction of extreme emotional distress, denominated cause of action number six in plaintiff's complaint; (2) negligence, denominated cause of action number seven in plaintiff's complaint; and (3) slander and slander per se, denominated cause of action number eight in plaintiff's complaint.

Defendant Markowitz moves to dismiss certain of plaintiff's claims on the grounds that those causes of action fail to state a claim upon which relief can be granted. Specifically, Markowitz moves to dismiss Stordeur's claim for: (1) sexual harassment violations of New York Executive Law §§ 296.1, 296.6, and 296.7, denominated cause of action number five in plaintiff's complaint; (2) intentional and reckless infliction of extreme emotional distress, denominated cause of action number six in plaintiff's complaint; and (3) slander and slander per se, denominated cause of action number eight in plaintiff's complaint.

### I. STANDARDS GOVERNING A 12(B)(6) MOTION TO DISMISS

A district court should grant a motion to dismiss under Fed.R.Civ .P. 12(b)(6) for fail-

ure to state a claim only if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) *Annis v. County of Westchester, N.Y.*, 36 F.3d 251, 253 (2d Cir.1994)).

In applying this standard, a district court must "read the facts alleged in the complaint in the light most favorable" to the plaintiff, and accept these allegations as true. *H.J. Inc.* at 249, 109 S.Ct. at 2906; *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Christ Gatzonis Elec. Contractor, Inc. v. New York City Sch. Constr. Auth.*, 23 F.3d 636, 639 (2d Cir. 1994); *see also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 165, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993) (citing Fed. R.Civ.P. 8(a)(2) to demonstrate liberal system of 'notice pleading' employed by the Federal Rules of Civil Procedure).

■ The court's duty merely is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980) *accord Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985). The appropriate inquiry, therefore, is not "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686; *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 124 (2d Cir. 1991) (plaintiff is not compelled to prove his case at the pleading stage).

■ Additionally, it is not required that a claimant set out in detail the facts upon which he or she bases a claim, but only a statement of his or her claim that will give defendant "fair notice of what [the] claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). Therefore, where a complaint is filed that charges each element necessary to recover, dismissal of the case for failure to set out evidential facts can

seldom be warranted. *U.S. v. Employing Plasterer's Ass'n of Chicago*, 347 U.S. 186, 188–89, 74 S.Ct. 452, 98 L.Ed. 618 (1954). Individual allegations, however, that are so baldly conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains are meaningless as a practical matter and, as a matter of law, insufficient to state a claim. *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.1987).

## II. INTENTIONAL TORT CLAIMS BARRED BY THE STATUTE OF LIMITATIONS

Defendants Computer Associates and Markowitz assert that plaintiff's intentional tort claims should be dismissed on the ground that they are barred under the applicable statute of limitations. The plaintiff asserts that the statute of limitations was tolled while her EEOC claim was pending, and that a complainant is statutorily forbidden to bring an action in court until she receives a Right to Sue letter, citing 42 U.S.C. § 2000e–5(f)(1) in support.

The plaintiff pleads three state law intentional tort claims, including intentional infliction of emotional distress, slander and slander per se. New York's Civil Practice Law and Rules ("CPLR") Section 215(3) imposes a one year statute of limitations for intentional torts. N.Y. CPLR § 215(3) (McKinney 1997). The plaintiff resigned in March 1995 and initiated suit on September 24, 1996, exceeding the one year period.

### A. Tolling of Statute of Limitations

■ New York has codified its statutes of limitations and the circumstances under which they may be tolled. CPLR §§ 201–18. Generally, "[a]n action ... must be commenced within the time specified in this article.... No court shall extend the time limited by law for the commencement of an action." CPLR § 201. The one year statute of limitation starts to run when the claim accrues. CPLR 203(a). The claim "accrues when the wrong is done, regardless of when it was discovered, [and] if the wrong is continuing ... each day gives rise to a new cause of action ... [and] each day will also

bring a new statute of limitations." McLaughlin, Practice Commentaries, *McKinney's Cons.Laws of N.Y.*, Book 7B, CPLR 203:1 p. 140.

Numerous common law tolling provisions have been retained in statutory form. *See, e.g.,* (1) CPLR § 204(a) (statute tolls after the commencement of an action has been stayed by court order or by statute); (2) CPLR § 207 (statute tolls during defendant's absence from the state); (3) CPLR § 208 (statute tolls during period plaintiff suffers from a disability of infancy or insanity); (4) CPLR § 204(b) (statute tolls during the time that a dispute that is ultimately determined to be nonarbitrable has been submitted to arbitration).

 The plaintiff alleges numerous incidents of harassment by the defendant Markowitz, commencing in or about April 1994 and continuing until approximately March 1995. Each incident may constitute a separate count of the intentional torts pled. Plaintiff initiated the instant action on September 24, 1996. The one year statute of limitation for each incident accrues on the date the intentional tort occurred, and does not toll because the action is repeated at a later date. Neither does the statute of limitations toll because the plaintiff wishes to maintain the status quo, be it a job, a business relationship, or a marriage. Most importantly, there is no provision that tolls the time for filing a cause of action during the period in which a litigant pursues an independent, though related, cause of action.

 The statute of limitations is designed to "put the adversary on notice to defend within a specified period of time" and to "protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence." *United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979). As there is no applicable statutory tolling provision, the failure to comply with the New York one year statute of limitations for intentional torts is fatal, unless there is a conflicting federal policy underlying the Title VII action.

**B. Pending EEOC Claims**

The district courts in this circuit have disagreed as to whether the statute of limitations for state common law causes of action toll during the pendency of an EEOC claim, and the Second Circuit has yet to provide guidance.

Cases in support of tolling have done so for two reasons: (1) to avoid duplicative litigation and judicial inefficiency, and (2) to further one of the central purposes of Title VII by allowing the EEOC the opportunity to investigate allegations of employment discrimination in order to facilitate dispute resolution before litigation commences. *See, e.g., Forbes v. Merrill Lynch, Fenner & Smith Inc.,* 957 F.Supp. 450, 456 (S.D.N.Y.1997) (holding intentional infliction of emotional distress claim was tolled during the time a claim was filed with EEOC until the time that the EEOC gave plaintiff a right-to-sue letter); *Anderson v. Yarp Restaurant, Inc.,* No. 94–CV–7543, 1996 WL 271891, at *2 (S.D.N.Y. May 21, 1996) (finding statute of limitations tolled during pendency of EEOC complaint involving allegations of sexual harassment); *Brown v. Bronx Cross County Medical Group,* 834 F.Supp. 105, 111 (S.D.N.Y.1993) (reasoning that not tolling statute of limitations during time EEOC complaint was pending obligates plaintiffs to pursue state claims in separate action resulting in judicial inefficiency and undermining purpose behind Title VII of resolving disputes prior to litigation).

The weight of authority, however, does not allow the state claims to be tolled during the pendency of the EEOC claim. *See, e.g., Walker v. Weight Watchers Int'l,* 961 F.Supp. 32, 36–37 (E.D.N.Y.1997) (holding statutes of limitation for state law intentional tort claims were not tolled during pendency of EEOC complaint because of the distinct and separate remedies provided for under Title VII and State law claims); *Hall v. USAir, Inc.,* No. 95–CV–3944, 1996 WL 228458, at *7, *8 (E.D.N.Y. April 29, 1996) (refusing to toll statute of limitations for intentional infliction of emotional distress during pendency of EEOC complaint); *Gray v. Shearson Lehman Bros., Inc.,* 947 F.Supp. 132, 137 (S.D.N.Y.1996) (holding plaintiff's whistle-

blower limitations period did not toll during time EEOC claim was pending); *Lamb v. CitiBank, N.A.,* No. 93–CV–2358, 1994 WL 497275, at *8 (S.D.N.Y. Sept.12, 1994) (finding state claim of intentional infliction of emotional distress distinct from title VII and Section 1983 claims and thus refusing to toll statute of limitations); *Taylor v. Levine,* No. 83–CV–4247, 1985 WL 3406, at *2 (E.D.N.Y. Jan.11, 1985) (reasoning that federal law does not affect state statutes of limitation, the court rejected plaintiff's argument that statute of limitations for state defamation action was tolled between the period of filing with EEOC and receipt of right-to-sue letter).

Other circuits are in agreement that a state statute of limitations is not tolled by the pendency of an individual's administrative complaint filed with the EEOC. *See, e.g., Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 322–23 (7th Cir. 1992) (filing of EEOC charge did not toll the statute of limitation on employee's state law invasion of privacy claim); *Arnold v. United States,* 816 F.2d 1306, 1312–13 (9th Cir.1987) (holding state law tort claims are not tolled during pendency of Title VII action); *Dupree v. Hutchins Bros.,* 521 F.2d 236, 238 (5th Cir.1975) (finding state statute of limitation for § 1981 action was not tolled during pendency of EEOC claim).

■ The federal and state claims proffered by the plaintiff are claims of a different nature and a clear distinction can be drawn. In the intentional tort claims, the plaintiff seeks to be free from injury caused by another person, whereas in the discrimination claims, plaintiff is pursuing freedom from discrimination in the workplace. *See Juarez,* 957 F.2d at 323; *Arnold,* 816 F.2d at 1312–13. As well, "individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII," *Tomka v. Seiler Corp.,* 66 F.3d 1295 (2d Cir.1995), further accentuating the distinctions between the claims.

This result is dictated by highly persuasive Supreme Court precedent. In *Johnson v. Railway Express Agency Inc.,* 421 U.S. 454, 455, 95 S.Ct. 1716, 1717–18, 44 L.Ed.2d 295 (1975), a black employee filed a claim with the EEOC charging his employer with engaging in a racially discriminatory promotion practice. He was terminated shortly thereafter. *Id.* More than three and one half years transpired before the EEOC concluded its inquiry and provided the plaintiff with his right-to-sue letter. *Id.,* 421 U.S. at 456, 95 S.Ct. at 1718. Plaintiff then initiated suit asserting violations of Title VII and 42 U.S.C.1981. *Id.* The § 1981 claim was governed by a Tennessee one year statute of limitation. *Id.* Finding the § 1981 claim time barred, the Court did not allow the pendency of the EEOC action to toll the statute of limitations. 421 U.S. at 466, 95 S.Ct. at 1723.

The Court analyzed the goals of Title VII and the procedural requirements of an EEOC claim. A claimant need not wait for a possible conciliation through the EEOC's voluntary compliance process, but instead can demand a right-to-sue letter and institute a Title VII action after the passage of 180 days, and although Title VII was designed as a comprehensive solution for discrimination in employment, it does not occupy the entire field of remedies available to a claimant. This is borne out in the " 'legislative history of Title VII [which] manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes.' " *Id.,* 421 U.S. at 459, 95 S.Ct. at 1719 (quoting *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 48, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974)). The Court stated that § 1981 and Title VII " 'augment each other and are not mutually exclusive,' " *id.* (quoting H.R.Rep. No. 92–238 p. 19 (1971)), while their coverage is not coextensive. *Id.,* 421 U.S. at 460, 95 S.Ct. at 1720. Noting that the administrative requirements of Title VII are not prerequisites to a § 1981 action, so too, the remedies under Title VII and under § 1981 are "separate, distinct, and independent." 421 U.S. at 461, 95 S.Ct. at 1721.

■ The borrowed state statute of limitations should be governed by its own rules of application, tolling and revival, absent a conflicting federal policy underlying the cause of action. *Id.,* 421 U.S. at 464, 95 S.Ct. at 1722. Although the Court acknowledged that Title VII "embodies a strong federal policy in support of conciliation and voluntary compli-

ance" and that failing to toll the statute would "force a plaintiff into premature and expensive litigation that would destroy" this policy goal, nonetheless, the Court found the § 1981 remedy to be fundamentally separate and independent from the procedural labyrinth of Title VII. *Id.*, 421 U.S. at 465–66, 95 S.Ct. at 1722–23. In conclusion, the Court found "no policy reason that excuses petitioner's failure to take the minimal steps necessary to preserve each claim independently." 421 U.S. at 466, 95 S.Ct. at 1723.

As with *Johnson's* § 1981 claim, the plaintiff's state law claims represent another independent avenue of redress outside of the EEOC's administrative route. Moreover, the one year state statute of limitation is being directly applied to a state intentional tort claim, and therefore the Court is not faced with borrowing the state statute of limitations to apply to a federal claim. Additionally, the Supreme Court has held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). Furthermore, neither the filing of a Title VII claim, nor the receipt of an EEOC right-to-sue letter is a condition precedent to filing the state intentional tort causes of action. Barbara Stordeur could have filed her state law claims at any time after her cause of action accrued.

Plaintiff's analysis of 42 U.S.C. § 2000e–5(f)(1) is misguided. Plaintiff suggests that a complainant is statutorily forbidden to bring an action in court until she receives a right-to-sue letter. This is not a correct statement of law. As a practical matter, § 2000e–5(f)(1) allows the charging party to demand a right-to-sue letter after 180 days rather than to create an obligation for the EEOC to process a claim within 180 days. *See* 29 C.F.R. § 1601.28, entitled Notice of right to sue: Procedure and authority; which provides, in relevant part:

(a) Issuance of notice of right to sue upon request. (1) When a person claiming to be aggrieved requests, in writing, that a no-

tice of right to sue be issued and the charge to which the request relates is filed against a respondent other than a government, governmental agency or political subdivision, the Commission shall promptly issue such notice as described in § 1601.28(e) to all parties, at any time after the expiration of one hundred eighty (180) days from the date of filing of the charge with the Commission . . .

§ 1601.28. *See also Johnson*, 421 U.S. at 458, 95 S.Ct. at 1719; *Merkel v. ITT Financial Services*, 95–CV–818, 1997 WL 222401 at *2 (N.D.N.Y. April 29, 1997).

The only clear distinction between the setting in *Johnson* and the case at bar is the forum in which the varied claims could have been raised. In *Johnson*, each claim arises under federal law, and therefore, has an independent basis for jurisdiction. In the instant action, supplemental jurisdiction is the basis for the exercise of federal jurisdiction over the state common law claims. There was a suggestion in *Johnson* that a plaintiff in a § 1981 suit might ask "the court to stay proceedings until the administrative efforts at conciliation and voluntary compliance have been completed." *Id.* In New York state courts, the "court in which an action is pending may grant a stay of proceedings in a proper case, upon such terms as may be just." CPLR 2201. In deciding such a motion, the court in its discretion considers "whether it is in the state or in the federal forum that a more complete disposition of the issues may be obtained and whether it is the federal or the state court that possesses a greater familiarity and expertise with the trial of such issues." *General Aniline & Film Corp. v. Bayer Co.*, 305 N.Y. 479, 485, 113 N.E.2d 844 (1953). Typically, a stay is granted when there is a previously filed action between the same parties for the same cause of action. *See, e.g., Houston v. Trans Union Credit Info. Co.*, 154 A.D.2d 312, 313, 546 N.Y.S.2d 600, 601 (1st Dep't 1989) (modifying trial term's dismissal of action in light of pending parallel federal action, and staying same); *El Greco Inc. v. Cohn*, 139 A.D.2d 615, 616, 527 N.Y.S.2d 256, 257 (2d Dep't 1988) (staying action pending outcome of earlier com-

menced federal action). "Where a plaintiff wishes or is required to pursue his claims in succession, rather than concurrently, in the absence of the parties' agreement made to waive the limitary period before it had expired, a judicial stay of the pending suit, rather than dismissal, albeit expressed to be without prejudice, is the only means by which the bar of limitations may be avoided." *Jewell v. County of Nassau*, 917 F.2d 738, 740–41 (2d Cir.1990) (citing *Board of Regents of the Univ. of the State of N.Y. v. Tomanio*, 446 U.S. 478, 486–87, 100 S.Ct. 1790, 1796, 64 L.Ed.2d 440 (1980)). This is not the circumstance in the instant action, as the plaintiff has failed to commence an action in state court.

 Although the allegations that form the basis for the intentional tort claims and the Title VII claim derive from a common nucleus of fact, and therefore satisfy the threshold requirements of supplemental jurisdiction, this only grants jurisdiction to otherwise valid claims, and does not entitle a plaintiff to bring time barred state law claims in federal court.

 Accordingly, plaintiff's intentional tort claims of intentional infliction of extreme emotional distress, slander and slander per se as against defendants Computer Associates and Markowitz are dismissed as time barred.

## III. CLAIM OF RECKLESS INFLICTION OF EMOTIONAL DISTRESS

 Plaintiff's sixth cause of action is for intentional infliction of emotional distress and for reckless infliction of emotional distress. There is, however, no separate recovery for emotional distress inflicted recklessly. The Second Circuit Court of Appeals, albeit in the context of a wrongful death claim, addressed the distinction between intentional and reckless infliction of emotional distress, and recognized the unavailability of the latter action under New York law. *Garland v. Herrin*, 724 F.2d 16, 18–19 (2d Cir.1983). This is so, even though Section 46 of the Restatement (Second) of Torts (1965) provides in part that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to

liability for such emotional distress ..." The Court analyzed New York precedent and concluded that the analysis of § 46 of the Restatement has not been completely adopted and therefore there is "no solid authority" for the proposition that New York law imposes "on a defendant liability for inflicting emotional distress 'recklessly,' though not 'intentionally.'" *Id.* at 19. *See also Pappanikoloaou v. Administrator of Veterans Admin.*, 762 F.2d 8, 9 (2d Cir.1985) *cert. denied* 474 U.S. 851, 106 S.Ct. 150, 88 L.Ed.2d 124 (finding no valid claim under New York law for negligent or reckless infliction of emotional distress in a disability benefits claim); *Three Crown Ltd. Partnership v. Caxton Corp.*, 817 F.Supp. 1033, 1049 (S.D.N.Y.1993) (disallowing recovery for emotional distress inflicted recklessly but not intentionally, in this securities fraud case). As per prevailing precedent, this Court is constrained from allowing plaintiff's claim for reckless infliction of emotional distress.

## IV. CLAIM OF NEGLIGENT HIRING, NEGLIGENT SUPERVISION AND NEGLIGENT INVESTIGATION

Plaintiff's seventh cause of action is for the defendant Computer Associates's negligent action in hiring and supervising defendant Markowitz, and in negligently investigating Ms. Stordeur's charges.

The defendant Computer Associates asserts that these claims are barred because the New York Workers' Compensation Law is the exclusive remedy for negligently inflicted employment related injuries.

 Section 29(6) of New York's Workers' Compensation Law provides, "[T]he right to compensation or benefits under this chapter, shall be the exclusive remedy to an employee ... when such employee is injured or killed by the negligence or wrong of another in the same employ." An exception to workers' compensation exclusivity allows an employee to sue the employer if the employer committed an intentional tort or a co-worker committed an intentional tort at the employer's direction. *Acevedo v. Consolidated Edison Co. of N.Y. Inc.*, 189 A.D.2d 497, 500, 596 N.Y.S.2d 68, 71 (1st Dep't 1993).

It is well-settled law that claims for accidental injuries arising out of employment are governed exclusively by the Workers' Compensation Law. *O'Brien v. King World Productions, Inc.,* 669 F.Supp. 639, 641 (S.D.N.Y.1987); N.Y. Work. Comp. Law §§ 10 & 11 (McKinney 1992). Negligence claims are clearly barred by the exclusivity provision. *Torres v. Pisano,* 116 F.3d 625, 640 (2d Cir.1997); see also *Chrzanowski v. Lichtman,* 884 F.Supp. 751, 756 (W.D.N.Y. 1995) (plaintiff's claims for negligent hiring and negligent infliction of emotional distress barred by exclusive remedy provided by Workers' Compensation statute); *Cusack v. Detroit Tigers Baseball Club, Inc.,* No. 89–CV–781, 1991 WL 330772 (N.D.N.Y. Aug.8, 1991), *aff'd* 956 F.2d 27 (2d Cir.1992); *O'Brien,* 669 F.Supp. at 641; *Burlew v. American Mutual Ins. Co.,* 63 N.Y.2d 412, 482 N.Y.S.2d 720, 472 N.E.2d 682 (1984) (holding claim for negligent infliction of emotional distress barred by the Workers' Compensation statute but claim for intentional infliction of emotional distress not barred).

Accordingly, defendant Computer Associates's motion to dismiss the negligence claims is granted.

## V. NEW YORK HUMAN RIGHTS LAW CLAIMS

Defendant Markowitz moves to dismiss plaintiff's claim of discrimination and retaliation pursuant to the New York Human Right's Law, as codified in the New York Executive Law §§ 296.1, 296.6, and 296.7, because plaintiff has failed to state a valid claim of retaliation and because Markowitz is not an employer, and cannot be held individually liable.

 A claim under New York's Human Rights Law[1] and under Title VII[2] are essentially identical, because "New York courts require the same standard of proof for claims brought under the [Human Rights Law] as those brought under Title VII." *Tomka,* 66 F.3d at 1304 n. 4 (citing *Miller Brewing Co. v. State Div. of Human Rights,* 66 N.Y.2d 937, 498 N.Y.S.2d 776, 489 N.E.2d 745 (1985)); *see also Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 479, 102 S.Ct. 1883, 1896, 72 L.Ed.2d 262 (1982) ("The elements of a successful employment discrimination claim [under New York and federal law] are virtually identical."); *Stetson v. NYNEX Serv. Co.,* 995 F.2d 355, 360 (2d Cir.1993) (plaintiff's claim under New York's Human Rights Law "is governed by the same standards as his federal claim").

The plain language of the section 296(a)(1) does not provide individual liability for an employee's acts of discrimination. The New York Court of Appeals defined the scope of individual liability for an employer under this section, finding no individual liability attaches "if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others." *Patrowich v. Chemical Bank,* 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659, 660, 473 N.E.2d 11 (1984). *See also Foley v. Mobil Chemical Co.,* 214 A.D.2d 1005, 626 N.Y.S.2d 908, 909 (4th Dep't 1995); *Monsanto v. Electronic Data Systems Corp.,* 141 A.D.2d 514, 529 N.Y.S.2d 512 (2nd Dep't 1988).

As Markowitz does not have an alleged ownership interest in Computer Associates, the inquiry is whether or not he had the power to do more than carry out personnel decisions made by others. Most courts interpreting this language look primarily to whether the individual in question has the power to hire and fire, the ultimate personnel decision. *Tomka,* 66 F.3d at 1317 (district manager had supervisory control over plaintiff and could review and comment on her

---

1. New York Exec. Law § 296(1)(a) provides:

 It shall be an unlawful discriminatory practice: (a) for an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

2. Title 42 U.S.C. § 2000e–2(a)(1) provides:

 It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

performance, but could not hire or fire and therefore wasn't an "employer" under the Human Rights Law). *See also Cerrato v. Durham*, 941 F.Supp. 388, 396 (S.D.N.Y. 1996) (considering whether defendant had the power to: (1) review plaintiff's performance; (2) hire or fire anyone; and (3) make recommendations which would affect plaintiff's employment status); *Storr v. Anderson School*, 919 F.Supp. 144, 148 (S.D.N.Y.1996) (finding supervisor was not an employer under § 296(1)(a) because the complaint did not allege that the supervisor had an ownership interest or the power to hire or fire the plaintiff); *McNulty v. New York City Dep't of Finance*, 941 F.Supp. 452, 460 (S.D.N.Y. 1996).

■■■ Plaintiff avers in her complaint that the Defendant Markowitz threatened her with termination if she complained to the Senior Vice–President, and that he told her "he had fought to get [plaintiff] her job and that he could unfight for her job." (Pl .Compl. ¶ 29). These somewhat conflicting statements are equivocal as to Markowitz' power to terminate the plaintiff's employment. Markowitz was in a position to prepare plaintiff's job performance review (Pl.Compl.¶ 30), and had the power to order plaintiff to perform menial tasks outside of her official duties (Pl.Compl.¶ 29), and to control the work conditions and employment tasks and opportunities within the trade show department. (Pl.Compl.¶ 27). Accepting as I must, plaintiff's allegations as true and drawing all reasonable inferences in plaintiff's favor, defendant's motion to dismiss plaintiff's claim pursuant to N.Y. Executive Law § 296(a)(1) for failing to satisfy the statutory definition of employer, is denied.

In addition, Human Rights Law § 296(6), under which plaintiff also claims, provides: "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." This provision has been interpreted to impose personal liability on an employee "who actually participates in the conduct giving rise to a discrimination claim." *Tomka*, 66 F.3d at 1317; *Persaud v. S. Axelrod Co.*,

No. 95–CV–7849, 1996 WL 11197, at *3 (S.D.N.Y. Jan.10, 1996) (plaintiff may maintain claims against an individual defendant for violations of the New York HRL if the individual defendant participated in the conduct giving rise to the discrimination claim). *See also Johnson v. A.P. Products, Ltd.*, 934 F.Supp. 625, 630 (S.D.N.Y.1996); *Luongo v. Nationwide Mut. Ins. Co.*, No. 95–CV–3190, 1996 WL, 445365, at *3 (S.D.N.Y. Aug.7, 1996); *Tagare v. NYNEX Network Systems Co.*, 921 F.Supp. 1146, 1152 (S.D.N.Y.1996); *Peck v. Sony Music Corp.*, 221 A.D.2d 157, 632 N.Y.S.2d 963 (1st Dep't 1995) (finding § 296(6) provides for individual liability and that *Patrowich* is not a bar to maintenance of the action).

Not all courts are in agreement with *Tomka, see, e.g., Lippold v. Duggal Color Projects, Inc.*, No. 96–CV–5869, 1998 WL 13854, at *2, *3 (S.D.N.Y. Jan.15, 1998) (discussing New York state court decisions that find no supervisory individual liability under § 296(6), yet Judge Martin found liability in accordance with *Tomka* ), however, reference to federal district court cases decided pre–*Tomka* have no persuasive value. For example, defendant Markowitz' Memorandum of Law in Support of the Motion to Dismiss relies upon *Falbaum v. Pomerantz*, 891 F.Supp. 986, 992 (S.D.N.Y.1995) (dismissed the claim under § 296(6) finding the "limitation embodied in the statutory definition of 'employer' and in *Patrowich*, could be easily evaded by alleging claims either under an aiding and abetting or retaliation theory) and *McIlwain v. Korbean Intern. Inv. Corp.*, 896 F.Supp. 1373 (S.D.N.Y.1995), two cases decided before *Tomka*, for the proposition that plaintiff's claims do not satisfy the pleading requirements of aiding and abetting . . . of § 296(6)." However, even *McIlwain* denied the defendant's motion to dismiss the § 296(6) claim, finding a sufficient basis to go forward on the averment of active participation by the defendant, with another, in the discriminatory conduct, described as unwelcome sexual comments and looking down plaintiff's blouse. *Id.* 896 F.Supp. at 1383.

■■■ In the present case, plaintiff has alleged that Markowitz sexually discriminated against her, and in so doing, created a hostile

work environment. Markowitz did so by, *inter alia*, making sexually lewd remarks, including, referring to the "blue speedos" he would wear to show his "bulge" to get "some babes" (Pl.Compl. at ¶ 19), that he had the best office to check out the "hot girls" that walk past (Pl.Compl. at ¶ 20), and by describing his recent marital love making. (Pl. Compl. at ¶ 24). Plaintiff's co-workers commented on Stordeur's sex-life, or lack thereof in light of her separation from her husband, (Pl.Compl. at ¶ 18), and one co-worker, Millin, repeatedly offered to show, and let Stordeur rub, his pelvic tatoo. (Pl.Compl. at ¶ 21). When plaintiff reported being called a bitch by a co-worker to her supervisor Markowitz, he told her to "take it like a man." (Pl. Compl. at ¶ 22), and Markowitz himself repeatedly referred to plaintiff and her female co-workers as "bitches." (Pl.Compl. at ¶ 28(b)). Under the standard set forth in *Tomka*, because Markowitz actually participated in the harassment, Stordeur's allegations are sufficient to satisfy § 296(6), and therefore defendant Markowitz' motion to dismiss the claim pursuant to N.Y. Executive Law § 296(6) is denied.

Defendant Markowitz also moves to dismiss plaintiff's claim under N.Y. Executive Law § 296(7) which provides: "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article or because he has filed a complaint, testified or assisted in any proceeding under this article." Defendant asserts that plaintiff has failed to allege that she suffered an adverse employment action or a causal connection between the acts alleged and her complaint to Markowitz.

The Court applies the same analysis to retaliation claims under the Human Rights Law as in federal employment cases under Title VII. *See Hendler v. Intelecom USA, Inc.*, 963 F.Supp. 200, 212 (E.D.N.Y. 1997). "To establish a prima facie case of unlawful retaliation, a plaintiff must show: (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal

connection between the protected activity and the adverse employment action." *Torres*, 116 F.3d at 639 (quoting *Tomka*, 66 F.3d at 1308). Plaintiff sufficiently alleges the first element, in that she notified defendant Markowitz in or about September 1994 that a male coworker was harassing her (Pl. Compl.¶ 22), and that the defendant Markowitz' actions at trade shows was unwelcome, revolting and repugnant (Pl.Compl.¶ 26), and on or about January 11, 1995 Ms. Stordeur again met with defendant Markowitz to discuss the discriminatory practices. (Pl. Compl.¶ 29). The treatment arising as a result of her protected activity of complaining to her supervisor of the discriminatory conduct, as alleged, including being threatened with termination if she complained to the Senior Vice President and ordering plaintiff to perform menial tasks (Pl.Compl.¶ 29) satisfies the second element of a conduct of an employment action disadvantaging the plaintiff. *See Torres*, 116 F.3d at 640 (indicating that veiled suggestions that failure to comply would lead to termination, discipline, or unpleasant assignments might affect an employee's working conditions sufficient to satisfy the "material adverse change in the terms and conditions of employment" standard). To establish a causal connection, a plaintiff may either show indirectly that the protected activity was followed closely by discriminatory treatment, or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or directly through evidence or retaliatory animus directed against a plaintiff by defendants. *See Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir.1991). The nexus between Stordeur's reporting the harassment to Markowitz and Markowitz' threat of termination if Stordeur were to report the harassment to the Senior Vice President is clear, direct and self-evident. Accordingly, the defendant Markowitz' motion to dismiss the plaintiff's claim for retaliation pursuant to N.Y. Executive Law § 296(7) is denied.

## CONCLUSION

For all the aforementioned reasons, plaintiff's state law intentional tort claims for intentional infliction of emotional distress,

slander and slander per se, as well as plaintiff's claims for reckless infliction of emotional distress, negligent hiring, supervision and investigation, denominated as causes of action six, seven and eight of plaintiff's complaint are hereby dismissed.

Plaintiff's claims pursuant to N.Y. Executive Law §§ 296(a)(1), 296(6) and 296(7), denominated as cause of action five in plaintiff's complaint, survive defendant Markowitz' motion to dismiss.

SO ORDERED.