Gwenda LEWIS and Kathleen Corke, Plaintiffs,

v.

TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY, Peter Senesi and Michael Chin, Defendants.

No. 97 Civ. 0607(PKL).

United States District Court, S.D. New York.

Nov. 17, 1999.

Saady & Saxe, Tampa, FL, Daniel L. Saxe, of counsel, Higgins & Trippett LLP, New York City, Thomas P. Higgins, of counsel, for Plaintiffs.

Law Offices of Christopher E. Chang, New York City, Christopher E. Chang, of counsel, for Defendants TBTA and Senesi.

Gangemi & Gangemi, Brooklyn, NY, Frank P. Gangemi, of counsel, for Defendant Chin.

### OPINION AND ORDER

LEISURE, District Judge.

Plaintiffs Gwenda Lewis and Kathleen M. Corke bring this action against defendants Triborough Bridge and Tunnel Authority ("TBTA"), Peter Senesi, and Michael Chin. Plaintiffs allege that they were sexually harassed and subsequently retaliated against when they complained, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the New York State Human Rights Law, N.Y. Exec. Law § 296

("HRL"). In addition, Lewis claims that she was discriminated against on the basis of her race. Both plaintiffs also state claims against TBTA for negligent employment, retention, and supervision of its employees. Defendants TBTA and Senesi have moved for summary judgment on various grounds.

This Court referred the matter to the Honorable James C. Francis, IV, United States Magistrate Judge. On December 10, 1998, Judge Francis issued a Report and Recommendation (the "Report") advising this Court, *inter alia*, to deny TBTA's motion for partial summary judgment and to grant Senesi's motion for summary judgment. Plaintiffs have objected to Part B of this Report, which recommends dismissing all claims against Senesi in his individual capacity.[1] For the following reasons, the Court declines to accept Part B to the extent it recommends dismissing plaintiffs' "aiding and abetting" claims against Senesi individually. Accordingly, defendants' motion for partial summary judgment is granted in part and denied in part.

## BACKGROUND

The substantive facts and procedural history of this action have been set forth in greater detail in Judge Francis's Report and Recommendation of December 10, 1998. See Report at 2–6. As such, only those facts necessary for the determination of the instant motion with respect to defendant Senesi are included here.

Plaintiffs Lewis and Corke are employed by defendant TBTA as toll collectors at the Manhattan Plaza of the Triborough Bridge in New York City. Defendant Peter Senesi is the General Manager of the Triborough Bridge. During 1994, Corke made various complaints to her supervisors regarding sexually harassment by employees of Allside Service Corporation, a company hired by the TBTA to provide cleaning services. See Corke Dep. at 58–62, 77–80, 110–13. Specifically, in August and October 1994, Corke complained that Allside employees were entering the women's locker room while female employees, including Corke, were changing. See id. at 77–80; Chang Decl., Exh. D & E. She also claimed that Allside employees were leering at her and would crowd the entrance to the locker room, forcing her to "run the gauntlet" and brush up against them. See Corke Dep. at 59–62. Her supervisors, however, assured her that the problem had been addressed See Chang Decl., Exh. D.

Although there was a period of approximately one year in which there were no incidents involving improper entry into the women's locker room, on or about November 20, 1995, Corke reported that the Allside cleaners were again entering the locker room while women were changing. See Corke Dep. at 102–04, 118–19. She complained directly to Senesi on November 23, 1995. See id. at 120. She also voiced her complaints about harassment to Richard Smith, TBTA's Chief Equal Employment Opportunity Officer, on December 1, 1995. See id. at 119.

On December 4, 1995, Senesi called Corke at home and interrogated her about who had made a complaint to Smith. See Corke Dep. at 141–42. She acknowledged that it was she. See id. at 142. Corke has testified that Senesi appeared not at all concerned about the problems with Allside, but rather was annoyed that she had made the complaint. See id. at 141–42.

Three days later, Senesi inspected the women's locker room, accompanied by the

---

1. On February 1, 1999, this Court denied the request of counsel for defendants TBTA and Senesi for an extension of time to submit objections to the Report, on the grounds that "defendants [had not] submit[ted][any] good reason why they failed to file in accordance with the prescribed timetable, nor why their request for an extension was so late-coming and made with such careless disregard." Mem. Order at 3. Consequently, the Report was deemed unopposed by defendants TBTA and Senesi, as the objections they filed with the Court on January 4, 1999 were accordingly ruled untimely. See id.

TBTA Operations Manager, a maintenance supervisor, and a union representative.[2] *See* Chang Decl. at Ex. L & M; Corke Dep. at 128–29. During that inspection, Senesi purportedly referred to the female bridge and tunnel officers ("BTO's") as "cunts" and allegedly stated, "We've got the biggest bunch of fucking crybabies here." Lopez Dep. at 36; *see also* Corke Dep. at 129–30. He also was heard to remark that "[b]oss man don't want no women with tiny hinnies [sic] on this job." Lopez Dep. at 36; *see also* Corke Dep. at 130.[3] Defendants maintain that these statements have been taken out of context. *See* Def. Rep. Mem. at 2.

According to Corke, instead of addressing the problem of sexual harassment, notices were posted that day advising employees that, pursuant to Mr. Senesi's instructions, the cleaners would have access to the women's locker room from 1:00 to 1:30 P.M. *See id.* at 120–22; Chang Decl., Exh. K. Senesi later ordered that a sign be posted at the entrance to the locker room to designate when Allside employees were cleaning. *See* Corke Dep. at 137–38; Chang Decl., Exh. T. Despite numerous complaints over a period of two years, the incidents of alleged sexual harassment continued. *See* Corke Dep. at 134, 146, 151, 164, 175, 177–78, 188–89; Madeira Dep. at 15–16.

The allegations by plaintiff Lewis are similar to Corke's contentions. Lewis also complained about Allside employees improperly entering the locker room while she was changing, *see* Lewis Dep. at 117–18, and blocking her access to the locker room, *see id.* at 122–24. In addition, Lewis testified that Senesi once telephoned her while she was at her lane assignment and berated her for complaining to Smith about harassment and discrimination. *See* Lewis Dep. at 149–50. Lewis maintains that Senesi ignored her complaints about harassment by defendant Michael Chin,[4] dismissing his conduct as merely disciplinary, not discriminatory, behavior. *See id.* at 109. On one occasion, when Lewis became ill because of ventilation problems in her booth, Senesi revealed her medical problem to other employees and made comments suggesting that because Lewis was female, she "didn't realize [whether] the ventilation system was working or not." *Id.* at 111. He also allegedly asked her union delegate, in referring to the plaintiffs' complaints, if "he was afraid of getting raped like the females are." *Id.* at 110. These incidents, Lewis asserts, revealed that Senesi "considered [her] complaints about Allside ... to be frivolous." *Id.*

Senesi's reputation at the TBTA was evidently rather infamous. In his deposition, he admitted to viewing pornographic tapes while he was on duty at the Whitestone Bridge. *See* Senesi Dep. at 21. According to one employee, Senesi was known as "the porno king of Whitestone Bridge," presumably because "it was common knowledge that he would sell or bring in videotapes to the facility." Verton Dep. at 87. On November 15, 1990, Senesi received a written reprimand from the TBTA for describing black temporary BTO's as "cockroaches." *See* Saxe Af-

---

2. The Union Representative was Louis Pignetti, who is also Corke's husband. *See* Corke Dep. at 43.

3. Plaintiffs concede that neither they nor any other women were present when these comments were allegedly made. *See* Corke Dep. at 129–30; Lewis Dep. at 113–15.

4. The Complaint alleged that Lewis had been "the subject of an ongoing campaign of discrimination and harassment" from Chin. Complaint at ¶ 16. For example, according to the Complaint, Chin allegedly made vari-

ous inappropriate comments to Lewis, including "I am the slave master and you are the slaves." *Id.* ¶ 16(a). Chin also allegedly told TBTA employees from Asian backgrounds that they were "suckers" for agreeing to shift switches with minority BTO's, and characterized the BTO's as "those people." *Id.* ¶ 16(c). Finally, Lewis complained that Chin made work assignments and supervised subordinates based upon their race and sex, and frequently used his position to unfairly discipline black female employees. *See id.* ¶ 16(f).

firm., Exh. 7. Defendants argue that Senesi's alleged comments concerning female TBTA employees were merely his personal views and did not in any way influence his response to plaintiffs' complaints. *See* Def. Mem. at 17–18.

In their memorandum of law accompanying their motion for summary judgment, defendants insist that Senesi investigated all claims of sexual harassment by Allside and consistently acted "professionally" in his investigation. Def. Mem. at 17–18. In his deposition, however, Senesi testified that he "was not aware that there was an investigation" relating to allegations of sexual harassment by Corke. Senesi Dep. at 55. According to Senesi, the complaints about Allside related only to issues of cleanliness and scheduling. *See id.* at 56–57. Regarding allegations of harassment, he asserted that the instant lawsuit was the "first time [he] heard anything of that nature." *Id.* at 56.

However, TBTA Operations Superintendent Peter Venturella testified that he received several complaints from plaintiffs regarding Allside employees leering at women and improperly entering the locker room, and stated that he forwarded such complaints to Senesi. *See* Venturella Dep. at 28–34. BTO Benevolent Association Union officer Neil Verton and TBTA Sergeant Dick Lopez also testified that they had personally communicated plaintiffs' complaints to Senesi. *See* Verton Dep. at 82–83; Lopez Dep. at 18–19. Furthermore, Smith testified that he had discussed plaintiffs' complaints about Allside with Senesi prior to Senesi's investigation, and that Senesi had told him that the complaints had alleged sexual harassment. *See* Smith Dep. at 32–33. Smith maintained that Senesi had informed him that he had fully investigated plaintiffs' complaints and found that Allside personnel were not leering at female TBTA employees in the locker room. *See id.* at 49.

On January 28, 1997, plaintiffs filed the instant action against defendants TBTA, Senesi, and Chin. Defendants TBTA and Senesi now move for partial summary judgment, arguing, *inter alia,* that all claims against Senesi in his individual capacity should be dismissed.

## DISCUSSION

Plaintiffs' object to Judge Francis's recommendation that all claims be dismissed against defendant Senesi in his individual capacity. Pursuant to 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b), the Court shall make a *de novo* determination of whether the portions of the Report to which plaintiffs have objected are legally correct and proper.

■ The New York Court of Appeals has held that an employee may not be individually subject to suit as an employer under Section 296(1) of the HRL "if he [or she] is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others." *Patrowich v. Chemical Bank,* 63 N.Y.2d 541, 542, 473 N.E.2d 11, 12, 483 N.Y.S.2d 659, 660 (1984).[5] Defendants maintain—and plaintiffs do not dispute—that Senesi had no such ownership interest in the TBTA, nor the power to hire or fire employees. *See* Def. Mem. at 15; Def. Rep. Mem. at 5; *see also* Pl. Mem. at 14–16. The fact that Senesi may have had supervisory control over the employees and could review and comment on their performance does not subject him to liability under § 296(1). *See Tomka v. Seiler Corp.,* 66 F.3d 1295, 1317 (2d Cir.1995). Therefore, plaintiffs' § 296(1) claims against Senesi arising from their fifth and

---

**5.** Section 296(1)(a) makes it an unlawful discriminatory practice "[f]or an employer or licensing agency, because of the age, race, creed, color, national origin, sex, disability, genetic predisposition or carrier status, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1).

eleventh causes of action must be dismissed.

Section 296(6) of the HRL, however, makes it an unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under [the HRL], or attempt to do so." N.Y. Exec. Law § 296(6). Unlike Title VII, HRL § 296(6) has been construed by the Second Circuit to impose liability on an individual "defendant who *actually participates* in the conduct giving rise to a discrimination claim." *Tomka*, 66 F.3d at 1317 (emphasis added). For example, in *Tomka*, the Second Circuit allowed the plaintiff to plead claims of sexual harassment against defendant employees in their personal capacities where the plaintiff alleged that "each of the individual defendants assaulted her and thereby created a hostile working environment." *Id.*[6]

The Report concludes that the plaintiffs' theory of aiding and abetting was "not based on any discriminatory acts committed by Mr. Senesi against either plaintiff," because (1) plaintiffs did not allege that Senesi physically harassed either of them in any way; (2) the only sexist remarks attributed to Senesi were made to other male employees and not to plaintiffs; and (3) Senesi's statements were not directed to the employees of the independent contractor who were charged with harassment, and hence could not have been "be construed as ratification or encouragement of the harassing behavior." Report at 10. Plaintiff's claims, Judge Francis determined, amounted to nothing more than allegations that Senesi "faile[ed] or refus[ed] to investigate claims of discrimination." *Id.* Such accusations were deemed insufficient to state a claim for relief under the HRL. *See id.* at 11 ("[T]he failure of an employer to investigate or remedy a complaint of discrimination does not, standing alone, constitute a primary violation of the HRL.").

Under *Tomka*, only a defendant who "actually participates in the conduct giving rise to a discrimination claim" may be held liable under HRL § 296(6). To "actually

**6.** The holding in *Tomka* has engendered great disagreement among New York state courts. *Compare Murphy v. ERA United Realty*, 251 A.D.2d 469, 472–73, 674 N.Y.S.2d 415, 417–18 (2d Dep't 1998) (affirming denial of summary judgment on claims that co-employees aided and abetted discrimination by their employer); *Steadman v. Sinclair*, 223 A.D.2d 392, 393, 636 N.Y.S.2d 325, 326 (1st Dep't 1996) (permitting defendant to amend answer to assert aiding and abetting counterclaims); *and Peck v. Sony Music Corporation*, 221 A.D.2d 157, 158, 632 N.Y.S.2d 963, 963 (1st Dep't 1995) (holding that § 296(6) "provides that an individual may be held liable for aiding and abetting discriminatory conduct"), *with Trovato v. Air Express Int'l*, 238 A.D.2d 333, 334, 655 N.Y.S.2d 656, 657 (2d Dep't 1997) (rejecting plaintiffs' contention that individual defendants could be held liable under § 296(6) because "[t]o find a co-employee liable as an aider and abettor would ignore the statutory and legal authority limiting the parties who may be sued for employment discrimination"); *and Foley v. Mobil Chem. Co.*, 214 A.D.2d 1005, 1006, 626 N.Y.S.2d 908, 909 (4th Dep't 1995) (stating that a co-employee "is not subject to a discrimination suit under the [HRL] unless it is shown that he has an ownership interest in the corporation or the power to do more than carry out personnel decisions made by others"). Furthermore, in *Ponticelli v. Zurich Am. Ins. Group*, 16 F.Supp.2d 414, 440 (S.D.N.Y.1998), Judge Sweet declined to exercise supplemental jurisdiction over HRL aiding and abetting claims against individual defendants because, he reasoned, "the state law is unsettled and because of the potential for confusion on liability and remedies that will result from having the individual defendants in this case." The New York Court of Appeals has not yet addressed the issue.

Nevertheless, *Tomka* is the law in this Circuit and is therefore binding on the lower federal courts. Accordingly, this Court follows the majority of decisions in this District, which have recognized such claims. *See, e.g., Salvatore v. KLM Royal Dutch Airlines*, No. 98 Civ. 2450, 1999 WL 796172, at *8 (S.D.N.Y. Sept. 30, 1999); *Romero v. Howard Johnson Plaza Hotel*, No. 97 Civ. 3706, 1999 WL 777915, at *8 (S.D.N.Y. Sept. 29, 1999); *Oliver v. General Nutrition Ctr.*, No. 97 Civ. 6800, 1999 WL 435208, at *3 n. 6 (S.D.N.Y. June 25, 1999); *Hecht v. GAF Corp.*, No. 95 Civ. 10379, 1999 WL 249711, at *1 (S.D.N.Y. Apr. 28, 1999); *Kojak v. Jenkins*, No. 98 Civ. 4412, 1999 WL 244098, at *7 (S.D.N.Y. Apr. 26, 1999).

participate" in the discrimination, however, an individual employee need not himself take part in the primary violation. As this Court recognized in *McIlwain v. Korbean Int'l Inv. Corp.*, 896 F.Supp. 1373, 1382–83 (S.D.N.Y.1995) (Leisure, J.), "an individual who is an employee of the business that employs the plaintiff, like any other 'individual,' can aid, abet, incite, coerce or compel, a primary violation of the HRL committed by another employee or the business itself." Thus, for example, in *Bascomb v. Smith Barney, Inc.*, No. 96 Civ. 8747, 1999 WL 20853, at *6 (S.D.N.Y. Jan. 15, 1999), the district court refused to dismiss claims against a Smith Barney officer who had allegedly "affirmed his approval" of a requirement, imposed by employees under his supervision, that the plaintiff obtain lunch on a regular basis for her supervisors and the supervisors' lunch companions. On the other hand, if the plaintiff fails to plead any facts suggesting that a defendant displayed any intent to discriminate or was in any way involved in the alleged discriminatory scheme, the defendant may not be held liable under the HRL. *See, e.g., Leykis v. NYP Holdings, Inc.*, 899 F.Supp. 986, 993 (E.D.N.Y.1995) (dismissing claims against Rupert Murdoch, where former employees of the *New York Post* "merely named Murdoch as a defendant, identified him in the Complaint and then failed to allege any facts that would give rise to individual HRL liability").

This Court respectfully declines to adopt the Report's conclusion that allegations of failure or refusal to investigate a complaint of sexual harassment cannot, as a matter of law, satisfy the requirements of HRL § 296(6). Although neither the Second Circuit nor the New York Court of Appeals has directly addressed the issue, numerous district courts have refused to dismiss "aiding and abetting" claims against supervisors who were informed about offensive conduct but failed to take appropri-

ate investigative or remedial measures. For example, in *Romero v. Howard Johnson Plaza Hotel*, No. 97 Civ. 3706, 1999 WL 777915, at *9 (S.D.N.Y. Sept. 29, 1999), the plaintiff had alleged that the defendant, her manager, had joked about alleged instances of sexual harassment and assault by employees under her supervision, laughed at their vulgar antics, and repeatedly failed to intervene on her behalf. Judge William H. Pauley III denied the manager's motion for summary judgment, concluding that a reasonable jury might find that he actually participated in the discrimination by "adding fuel to the fire." *Id.* at *9.

Similarly, in *Hicks v. IBM*, 44 F.Supp.2d 593 (S.D.N.Y.1999), Judge Colleen McMahon refused to dismiss claims against IBM supervisory personnel who had allegedly failed to address the plaintiff's claims of discrimination. The plaintiff alleged that she had been the target of racial comments from co-employees for over two years, which she claimed created a hostile working environment. *See id.* at 594. She asserted that "[e]ach time a racially offensive incident occurred, [she] notified her lab manager;" yet the manager "failed to take adequate steps to alleviate the harassment." *Id.* at 595. Eventually, the plaintiff reported her complaints to a Vice President for Human Resources, who in turn assigned the matter to another executive with the same title. *See id.* However, while one executive "failed to make any meaningful investigation and recommendation for corrective action," the other established a procedure that, she contended, resulted in the micro-management of her work and caused her lab manager to threaten her continued employment with the company. *Id.* In light of these allegations, the Court refused to dismiss the plaintiff's "aiding and abetting claims" against her supervisors in their individual capacities,[7] because, it held, it would be

---

7. Ironically, the *Hicks* Court dismissed the plaintiff's § 296(6) claim against the employee who allegedly made many of the offensive remarks, concluding that he "stands in a different place" than the supervisors because he was "alleged to have committed, and incited

possible for the plaintiff to demonstrate that by failing to take adequate actions to correct the discrimination, her supervisors had "encouraged, condoned or approved" of the offensive conduct. *Id.* at 600.[8]

Finally, in *Rosetti v. Hudson Valley Community College*, No. 96–CV–13, 1997 WL 567936, at *1–*2 (N.D.N.Y. Sept. 8, 1997), the plaintiff, a business school instructor, complained that a colleague had subjected to her to continued and repeated sexual harassment. In addition to the perpetrator and the college, she sued various members of the school's administration, including the president and dean of the business school, for failing to respond to her complaints. The court found that the "plaintiff might possibly be able to prove that the administrators aided and abetted some unlawful conduct," and thus refused to dismiss the claims against the

defendants in their individual capacities. *Id.* at *6; *see also Riedinger v. D'Amicantino*, 974 F.Supp. 322, 324, 327 n. 3 (S.D.N.Y.1997) (finding genuine issues of material fact with respect to whether certain individuals who were·informed about, but ignored, the plaintiff's complaints about sexual harassment were participants in conduct resulting in the sexual harassment and retaliation); *Wise v. New York City Police Dep't*, 928 F.Supp. 355, 373–74 (S.D.N.Y.1996) ("Summary judgment is inappropriate because there are disputed issues of material fact concerning whether [the Commanding Officer] knew about the alleged hostile work environment ... and whether he condoned it, and whether [a police lieutenant] observed the [alleged] incident [of sexual harassment] and failed to intervene.").[9]

---

other unnamed employees to commit, the very discriminatory acts that are at issue here." *Hicks*, 44 F.Supp.2d at 600 n. 10. Holding that "the primary actor cannot be an aider and abettor of his own actions," the Court dismissed the claim. *Id. But cf. Salvatore*, 1999 WL 796172, at *8 (refusing to dismiss § 296(6) claims against an individual defendant where the defendant was "the sole KLM employee alleged to have engaged in the discriminatory conduct").

8. This Court declines to follow *Hicks* in recognizing this test for individual employee liability, however. Under the circular framework in *Hicks*, every instance of discrimination that gives rise to employer liability under § 296(1) would also give rise to an aiding and abetting claim against at least one employee.

*Hicks* correctly noted that the language it quoted from *DeWitt v. Lieberman*, 48 F.Supp.2d 280, 293 (S.D.N.Y.1999) ("As the law in New York now stands, an 'employer cannot be held liable for an employee's discriminatory act unless the employer became a party to it by encouraging, condoning, or approving it.'") (quoting *State Div. of Human Rights v. St. Elizabeth's Hosp.*, 66 N.Y.2d 684, 687, 487 N.E.2d 268, 269, 496 N.Y.S.2d 411, 412 (1985)), represents the test for whether an employer is liable for is employees' acts of discrimination. The Court went on, however, to apply the "encouraging, condoning, or approving" test to the actions of the *individual defendants*, notwithstanding its recognition that "[i]t is axiomatic that a corporation can

only act through its employees; therefore, a large corporate employer like IBM can only 'encourage, condone, or approve' discrimination by the acts of supervisors like [the individual defendants]." *Id.* at 700.

It is true that once a violation of the HRL by the employer has been established, an individual supervisor *may* be held liable for aiding and abetting the primary violation. *See Hicks*, 44 F.Supp.2d at 600 ("'It is the employer's participation in the discriminatory practice that serves as the predicate for the imposition of liability on others for aiding and abetting.'") (quoting *Murphy*, 674 N.Y.S.2d at 417). Conversely, in the absence of a finding of liability against the employer, the individual supervisors cannot be held liable under HRL § 296(6). *See DeWitt*, 48 F.Supp.2d at 293 ("[P]laintiff cannot prevail against [her supervisor] individually on her state and local claims unless she can first establish the liability of [the employer]."). However, this Court cannot agree that the employees should always be held individually liable whenever an employer is found to have "encouraged, condoned, or approved" of improper behavior. As such, while the standard for determining "aider and abettor" liability under § 296(1) remains unclear, the Court cannot endorse the application of the "encouraging, condoning, or approving" test to § 296(6) claims against individual defendants.

9. In addition, federal courts have often refused to dismiss charges against individual defendants who both participated in the pri-

In concluding that Senesi may not be held individually liable under the HRL, the Report relies on two district court opinions dismissing § 296(6) claims against defendants in their individual capacities. Upon closer inspection, however, these decisions are distinguishable from the case at bar. First, *Karibian v. Columbia Univ.*, 930 F.Supp. 134, 146–48 (S.D.N.Y.1996), does contain a sentence that, standing alone, might be read to render plaintiffs' claims against Senesi insufficient as a matter of law: "None of the ... provisions [in Title VII or the HRL] contains any language which can be interpreted as creating liability for failure to investigate and remedy a complaint of discrimination." *Id.* at 146. However, the decision in *Karibian* not to impose liability on the employee for failure to investigate was predicated on the Court's own legal conclusion that no sexual harassment had occurred. *See id.* at 147 ("If what occurs is an employer's failure to investigate and take remedial measures in response to a complaint of discrimination, *and if it turns out that no actual discrimination has occurred,* then there is nothing which actually constitutes any conduct banned by the statute.") (emphasis added). Thus, although the failure to investigate allegations of sexual harassment does not violate the HRL in and of itself, it does not therefore follow that individual supervisors who fail to remedy acts of discrimination cannot be held liable when their failures allow, or even encourage, a primary violation to continue.

*Rivera v. Prudential Ins. Co.*, No. 95–CV–0829, 95–CV–0830, 1996 WL 637555 (N.D.N.Y. Oct.21, 1996), upon which defendants base their argument in their reply memorandum of law, is also distinguishable. In *Rivera*, the court dismissed HRL claims against a Prudential human resources consultant who had conducted an investigation into the plaintiffs' sexual harassment claims. After one of the plaintiffs challenged the results of the investigation, the consultant purportedly "began to scream at [her] and attempted to blame [her] for the problem," and further suggested that she "should watch the way [she] dressed in order to avoid future problems." *Id.* at *11. Citing *Karibian*, 930 F.Supp. at 146, for the proposition that "no provision in HRL can be interpreted as creating liability for failure to investigate and remedy discrimination complaint," the court held that although "[the consultant's] alleged ineptitude and insensitivity raise questions of fact with regard to the question of whether Prudential provided a reasonable avenue of complaint for the plaintiffs," "[i]n and of itself, however, [the consultant's] conduct is not actionable as discrimination under the HRL." *Id.* at *13. It therefore granted the consultant's motion for summary judgment with respect to the plaintiffs' § 296(6) claims.

 Yet, like *Karibian*, the court in *Rivera* had already dismissed all of the plaintiffs' HRL claims against Prudential. *See id.* at *12. Thus, although Title VII claims against Prudential remained, because the *Rivera* plaintiffs could not establish employer liability under the HRL, the individual defendants could not be held liable as aiders and abettors. *See DeWitt v. Lieberman*, 48 F.Supp.2d 280, 293 (S.D.N.Y.1999) ("There is ... a requirement [under § 296(6)] that liability must first be established as to the employer/principal before accessorial liability can be found as to an alleged aider and abettor."). In the instant action, however, the HRL claims against defendant TBTA have not been dismissed and thus TBTA remains subject to liability. If, as in *Karibian* and *Rivera*, "it turns out that no actual discrimination has occurred," the § 296(6) claims against Senesi in his personal ca-

---

mary violation by making inappropriate comments or sexual advances and later failed to use their position to remedy the situation. *See, e.g., Rosario v. Copacabana Night Club, Inc.*, No. 97 Civ.2052, 1998 WL 273110, at *1,

*3, *8 (S.D.N.Y. May 28, 1998); *Stordeur v. Computer Assocs. Int'l, Inc.*, 995 F.Supp. 94, 104 (E.D.N.Y.1998); *Wills v. Key Food Stores Co-operative, Inc.*, No. 95 CV 5333, 1997 WL 168590, at *3, *6 (E.D.N.Y. Apr. 9, 1997).

pacity shall be dismissed, no matter what the extent or intent of his investigation was. *Karibian,* 930 F.Supp. at 147. However, until the TBTA is exonerated, plaintiff's claims against Senesi are distinguishable from those dismissed in *Karibian* and *Rivera,* and thus can withstand summary judgment.

■ In sum, the law is clear that a supervisor need not make derogatory comments or unwelcome sexual advances to subject himself or herself to liability under the HRL. *See supra* at **9–12. Rather, the case law establishes beyond cavil that a supervisor's failure to take adequate remedial measures can rise to the level of "actual participation" under HRL § 296(6). In the instant action, plaintiffs have alleged that their supervisor intentionally or recklessly disregarded their repeated complaints and have pleaded facts that give rise to an inference of discriminatory intent. There exist genuine material issues of fact as to whether Senesi's actions in response to the complaint were professional, nondiscriminatory, and sincere. *See* Report at 15 ("[T]here is no suggestion that [plaintiffs' complaints about the cleaners staring at them and physically crowding them] were addressed in any systematic way."); *id.* ("[T]here is no evidence that TBTA supervisors ever rebuked Allside employees, sought to discipline them, or even discussed the issue with Allside management."). Accordingly, the Court declines to adopt Part B of the Report.

Defendant Senesi's motion for summary judgment is therefore denied with respect to plaintiffs' aiding and abetting claims.[10]

## CONCLUSION

For the foregoing reasons, the Court declines to adopt Part B of the Report and Recommendation. As there have been no objections to the remainder of the Report, having conducted a *de novo* review, as required by 28 U.S.C. § 636(b)(1), the Court adopts Parts A, C, D, E, and F of the Report. Accordingly, defendants' motion for summary judgment is HEREBY GRANTED with respect to all claims of negligent supervision; HEREBY GRANTED with respect to claims of discrimination under § 296(1) and retaliation under HRL § 296(7) against defendant Senesi; and HEREBY DENIED in all other respects. The parties are ordered to appear before this Court at the United States Courthouse, 500 Pearl Street, Courtroom 18B, New York, New York, on December 17, 1999, at 10:30 a.m. for a pretrial conference.

---

**10.** Plaintiffs have also objected to the Report's recommendation that their claims against Senesi alleging retaliation under HRL § 296(7) be dismissed. *See* Report at 12–13 n. 3. The Court adopts the Report's conclusion that plaintiffs have failed to demonstrate evidence of "an employment action disadvantaging [them]." *Tomka,* 66 F.3d at 1308. Plaintiffs do not allege that they were explicitly threatened with termination, nor do they show how any of Senesi's statements contained "veiled suggestions" that continued complaints might have adverse consequences. *See Torres v. Pisano,* 116 F.3d 625, 640 (2d Cir.1997); *Stordeur,* 995 F.Supp. at 105. Moreover, they have not demonstrated how Senesi's conduct "altere[ed] the conditions of

[their] work." *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 715 (2d Cir.1996). The fact that Senesi may have berated them, whether in front of other co-workers or not, does not suffice. *See Brennan v. City of White Plains,* 67 F.Supp.2d 362, 373–74 ("While verbal abuse might at times be sufficiently severe and chronic to constitute an adverse employment action, such behavior, without more, hardly rises to the level of actionable retaliation."); *Lapsley v. Columbia Univ. College of of Physicians & Surgeons,* 999 F.Supp. 506, 522 (S.D.N.Y.1998). Accordingly, plaintiffs' retaliation claims (*i.e.,* their sixth and twelfth—although misnumbered "eleventh"—causes of action) with respect to Senesi must also be dismissed.