**Inbal HAYUT, Plaintiff,**

v.

**STATE UNIVERSITY OF NEW YORK; State University of New York College at New Paltz; Alex Young; Richard Varbero; Gerald Benjamin; and Lewis Brownstein, Defendants.**

No. 00–CV–0725.

United States District Court, N.D. New York.

Dec. 18, 2000.

---

334

Colin Law Office, White Plains, NY (Lisa Fern Colin, William Martin, of counsel), for plaintiff.

Hon. Eliot Spitzer, Attorney General of the State of New York, Office of the Attorney General, Albany, NY (Deborah A. Ferro, of counsel), for defendants State University of New York, SUNY College at New Paltz, Varbero, Benjamin and Brownstein.

Epstein, Becker & Green, P.C., New York City (Kenneth J. Kelly, Lauren A. Malanga, of counsel), for defendant Young.

## MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

## I. INTRODUCTION

On February 2, 2000, plaintiff Inbal Hayut ("Hayut" or "plaintiff") commenced the instant action in the Southern District of New York against defendants pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681—1688, and for the deprivation of federal constitutional rights pursuant to 42 U.S.C. §§ 1983 and 1988, and various state laws, including the New York State Human Rights Law, Executive Law § 296 ("HRL"). She is asserting causes of action for sex discrimination, due process and equal protection violations, state constitutional tort, ministerial neglect, defamation, and intentional infliction of emotional distress, and is seeking compensatory and punitive damages, attorneys' fees and costs, and injunctive relief. On May 5, 2000, venue was transferred to the Northern District of New York by the Honorable William C. Conner.

Defendant Alex Young ("Prof.Young") now moves to dismiss all claims against him pursuant to Federal Rule of Civil Procedure 12(b)(6). The other defendants move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Plaintiff opposes. Oral argument was heard on October 27, 2000, in Albany, New York. Decision was reserved.

## II. FACTS

This action arises out of the alleged sexual harassment of Hayut by Prof. Young, and the failure of defendants Richard Varbero ("Dean Varbero"), Lewis Brownstein ("Prof.Brownstein"), and Gerald Benjamin ("Dean Benjamin") (collectively, the "individual defendants"), to take reasonable steps to investigate her complaints of sexual harassment. The following are the facts stated in the light most favorable to the nonmoving plaintiff.

Hayut is a foreign-born Jewish female of Israeli descent.[1] After successful completion of two years of community college, she enrolled as a student at defendants State University of New York ("SUNY") and SUNY College at New Paltz ("SUNY New Paltz") (collectively "SUNY defendants") for the 1998–1999 academic year. She alleges that one of her instructors, Prof. Young, sexually harassed her in class throughout the Fall 1998 semester.[2] This harassment consisted of Prof. Young continuously referring to her as "Monica Lewinsky" throughout the fall semester, and making comments which associated plaintiff with some of Lewinsky's more notorious conduct. Prof. Young observed that plaintiff wore the same color lipstick as Monica Lewinsky, and made comments such as, "How was your weekend with Bill," and "Shut up, Monica. I'll give you a cigar later." All of these comments were made in front of the entire class. Plaintiff was greatly distressed by these comments, and she asked Prof. Young to stop.

The effect of this harassment was intensified by the importance of Prof. Young to Hayut's academic success. Hayut believed that she needed his approval to succeed at SUNY New Paltz, because his classes constituted more than fifty percent of her grade point average for the semester and one hundred percent of her grade point average in her major. In addition, the

---

1. Initially, Hayut also alleged discrimination based on religion and national origin in her second, third, fourth, and fifth causes of action. She has failed to allege any facts to support these claims, and to the extent these causes of action are based on such claims, they must be dismissed.

2. Hayut took two classes with Prof. Young in the fall semester, both in her major (Political Science). She was in Prof. Young's Multinational Corporations class on Tuesday and Thursday mornings, and Prof. Young's International Politics class on Tuesday and Thursday afternoons.

political science department at SUNY–New Paltz had only a few professors, which led Hayut to believe that she would have to continue to take classes from Prof. Young in order to complete her degree requirements in political science.

In November 1998, when the alleged harassing conduct had not ceased, she went to an associate dean, Dean Varbero, to complain about Prof. Young's conduct. He referred plaintiff to Prof. Brownstein, chair of Prof. Young's department. Plaintiff alleges she went to Prof. Brownstein's office and informed the staff she was there to complain about Prof. Young's conduct. She was informed that Prof. Brownstein was not in his office. She waited one hour for him to return, but he did not. No one in his office offered to help her. After waiting an hour in his office, she left. She did not make an appointment, or follow up on her complaint until January 1999.[3]

Because of Prof. Young's harassment, Hayut was overcome with shame and humiliation. She was unable to concentrate, and her academic performance was adversely affected. She barely passed her courses in the fall semester, and received

failing grades in the spring 1999 semester. She voluntarily withdrew from SUNY–New Paltz, and had to complete a year of remedial education before she was permitted to matriculate at another university.[4]

## III. *STANDARD OF REVIEW*

### A. *12(b)(6) Motion to Dismiss*

In deciding a Rule 12(b)(6) motion[5], a court "must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant; it should not dismiss the complaint 'unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.'" *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also Kaluczky v. City of White Plains*, 57 F.3d 202, 206 (2d Cir.1995). However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true. *See, e.g., Clapp v. Greene*, 743 F.Supp. 273, 276 (S.D.N.Y.

---

**3.** Plaintiff argues that these allegations demonstrate that defendants Dean Varbero, Prof. Brownstein, and Dean Benjamin adopted procedures to frustrate students who attempted to bring harassment claims against faculty members. Although Hayut does not allege that Dean Benjamin was personally involved in any of the conduct at issue in this case, her complaint alleges that he "was the Dean, College of Arts and Sciences and the supervisor of defendant Varbero. By virtue of his title, familiarity, and accessibility to students, students often complained about sensitive subjects such as sexual harassment to defendant Benjamin. Defendant Benjamin served as 'advocate' for students with complaints regarding faculty and was involved in the investigation of complaints of sexual harassment against students. In addition, Benjamin was responsible for all complaints against faculty received by his office, including those received by Varbero." Complaint at ¶ 12. The complaint goes on to state that "defendants knew, or should have known, that certain instructors, including defendant Young, exhibited bizarre, disturbing, sexually harassing and gender-discriminatory behavior toward

students," Complaint at ¶ 21, and that "defendants had received complaints about [such] conduct by defendant Young but the defendants failed to take corrective action." Complaint at ¶ 22.

**4.** Because plaintiff is no longer a student at SUNY–New Paltz, her tenth cause of action for injunctive relief must be dismissed as moot. *See Pederson v. Louisiana State Univ.*, 213 F.3d 858, 874 (5th Cir.2000) (finding request for injunctive relief moot as to named plaintiffs where plaintiffs were no longer enrolled at university and did not allege that they intended to return); *Gonzalez v. Kahan*, 1996 WL 705320 (E.D.N.Y.1996) (holding that request for injunctive relief was moot where plaintiff was no longer a student at university nor subject to further contact with professor who allegedly harassed her).

**5.** The standard of review for the other defendants' motion pursuant to Federal Rule of Civil Procedure 12(c) is the same as that for a motion pursuant to Rule 12(b)(6). *Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir.1998).

1990); *Albert v. Carovano,* 851 F.2d 561, 572 (2d Cir.1988).

### B. *Title IX*[6]

In order to establish liability for sexual harassment under Title IX, plaintiff must show that "an official who . . . has authority to address the alleged discrimination and to institute corrective measures on the [university's] behalf has actual knowledge of discrimination . . . and fails to adequately respond," *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 290, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998). Furthermore, the official's failure to respond "must amount to deliberate indifference." *Id.*

### C. *42 U.S.C. § 1983*

To recover damages under 42 U.S.C. § 1983, plaintiff must show that: (1) "the conduct complained of was committed by a person acting under color of state law"; and (2) such "conduct deprived [plaintiff] of rights, privileges or immunities secured by the Constitution or laws of the United States." *Greenwich Citizens Comm., Inc. v. Counties of Warren and Washington Indus. Dev. Agency,* 77 F.3d 26, 29–30 (2d Cir.1996) (quoting *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)).

## IV. *DISCUSSION*

### A. *Sufficiency of the allegations*

 Defendants argue that the allegations contained in plaintiff's complaint are not sufficient to state a cause of action under any of her theories of relief. They assert that Prof. Young's comments may have been insensitive, or politically incorrect, but that they are simply not actionable. The defendants are wrong.

The substance of plaintiff's allegations of sexual harassment is that Prof. Young, in front of the entire class, continually referred to her as "Monica Lewinsky" throughout the fall 1998 semester and made numerous comments such as those described above. Resolving all inferences in favor of the plaintiff, these comments, taken in the context of the White House sex scandal, would be the equivalent of Prof. Young telling plaintiff's classmates that plaintiff would give, or was giving, oral sex to older men in positions of authority. The statement, "Shut up, Monica. I'll give you a cigar later" could have been interpreted as an assertion by Prof. Young that he and Hayut, as one of his students, were engaging in the types of sexual behavior of which intern Lewinsky and President William Clinton were accused.[7] The timing of these comments, occurring as they did at the height of the White House sex scandal, is a significant consideration in determining the legitimate inferences which might be drawn from them. They were made by an older man who, at the time, had a strong influence or control over plaintiff's life and future. In addition, plaintiff was required to be in Prof. Young's presence for four class periods each week of the fall semester. Viewing Prof. Young's comments in the light most favorable to plaintiff, and drawing all reasonable inferences in her favor, the harassment alleged in this case was "of such quality or quantity that a reasonable [student] would find the conditions of her [education] altered for the worse." *Torres,* 116 F.3d at 632.

The mere fact that these comments were not accompanied by requests for sexual favors does not affect the sufficiency of plaintiff's allegations. *See Tomka v. Seiler Corp.,* 66 F.3d 1295, 1305 (2d Cir.1995). All that is required of plaintiff at this stage

---

**6.** The Second Circuit has held that Title VII principles apply in interpreting sexual harassment claims brought under Title IX. *Torres v. Pisano,* 116 F.3d 625, 630 (2d Cir.1997); *Kracunas v. Iona College,* 119 F.3d 80, 86 (2d Cir.1997). Accordingly, this opinion cites cases decided under Title VII, as well as under Title IX.

**7.** The parallel between "intern" Lewinsky and "student" Hayut is obvious.

of the litigation, is to plead sufficient facts to demonstrate that her educational experience was "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions" of her education and create a sexually hostile environment. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citation and internal quotation omitted). Plaintiff's allegations are sufficient to state a cause of action for sexual harassment.

### B. *Title IX*

■ However, the finding that plaintiff's complaint contains sufficient allegations to state a claim for hostile environment sexual harassment does not end the inquiry. In order to establish liability for sexual harassment under Title IX, plaintiff must show that "an official who ... has authority to address the alleged discrimination and to institute corrective measures on the [university's] behalf has actual knowledge of discrimination ... and fails to adequately respond." *Gebser*, 524 U.S. at 290, 118 S.Ct. 1989. Furthermore, the official's failure to respond "must amount to deliberate indifference." *Id.* Plaintiff has alleged that she reported Prof. Young's conduct to Dean Varbero and to Prof. Brownstein's office, and that nothing was done by either defendant. Such allegations are sufficient to state a claim for violation of Title IX.

■ The next issue is whether or not her Title IX claim is properly asserted against the defendants in this case. She has asserted her Title IX claims against all the defendants—the SUNY defendants as well as the individual defendants. Defendants argue that the weight of authority, including cases decided in this Circuit, holds that only the *recipient* of federal funds can be liable under Title IX. They argue, therefore, that plaintiff cannot premise individual liability on this statute. Defendants are correct. *See Niles v. Nelson*, 72 F.Supp.2d 13, 17 (N.D.N.Y.1999) (citing, *e.g.*, *Smith v. Metropolitan School Dist.*, 128 F.3d 1014, 1019–1020 (7th Cir. 1997)); *Kinman v. Omaha Pub. Sch. Dist.*, 171 F.3d 607, 611 (8th Cir.1999); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 901 (1st Cir.1988); *Doe v. School Admin. Dist. No. 19*, 66 F.Supp.2d 57, 59 (D.Me. 1999); *Petrone v. Cleveland State Univ.*, 993 F.Supp. 1119, 1125 (N.D.Ohio 1998); *Buckley v. Archdiocese of Rockville Centre*, 992 F.Supp. 586, 588 n. 3 (E.D.N.Y. 1998); *Nelson v. Temple Univ.*, 920 F.Supp. 633, 636–37 (E.D.Pa.1996); *Pallett v. Palma*, 914 F.Supp. 1018, 1025 (S.D.N.Y.1996), rev'd on other grounds, 119 F.3d 80 (2d Cir.1997); *Torres v. New York Univ.*, 1996 WL 15691 at *2 (S.D.N.Y.1996). Accordingly, Hayut's Title IX claims alleged in her first cause of action must be dismissed as against the individual defendants.

### C. *Section 1983*

■ In addition to suing the defendants directly under Title IX, plaintiff seeks to impose liability on the individual defendants under 42 U.S.C. § 1983 for the alleged Title IX violations, as well as for violations of the due process[8] and equal

---

**8.** Though plaintiff pleads causes of action under the due process clauses of both the U.S. and New York Constitutions, her claims are more properly analyzed under the equal protection clauses of those Constitutions. *See Bisignano v. Harrison Central School Dist.*, 113 F.Supp.2d 591, 598 (S.D.N.Y.2000) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process,"' must be the guide for analyzing these claims.' ") (quoting *Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion of Rehnquist, C.J.)). *See also Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir.1999), cert. denied, —— U.S. ——, 120 S.Ct. 1832, 146 L.Ed.2d 776 (2000). In any event, the Court finds that plaintiff has failed to allege conduct which meets the heightened "shocks the conscience" standard applicable to substantive due process claims, *see Abeyta v. Chama Valley Indep. Sch. Dist.*, 77 F.3d 1253, 1256 (10th Cir.1996) (more is required to state claim for violation

protection clauses of the Fourteenth Amendment. Defendants argue that any such Section 1983 claims are subsumed by Title IX and must therefore fail:

The Second Circuit has recently considered the question of whether a Section 1983 claim against a *school district* is subsumed by Title IX, and decided the question in the affirmative. *See Bruneau v. South Kortright Central School District*, 163 F.3d 749 (2d Cir.1998), *cert. denied*, 526 U.S. 1145, 119 S.Ct. 2020, 143 L.Ed.2d 1032 (1999). *Bruneau* involved a suit commenced by a school student against the school district, school board, assistant superintendent, and her teacher pursuant to both Title IX and Section 1983 for alleged sexual harassment by her fellow students. Defendants moved for summary judgment, in part, on the grounds that Title IX provided the exclusive remedy for plaintiff's claims and that her Section 1983 claim was precluded by Title IX's remedial scheme.

After dismissing the individual defendants based on qualified immunity, the Second Circuit noted that although Section 1983 does supply a cause of action for the enforcement of constitutional or statutory rights, it "is not available for violations of all federal statutes." *Bruneau*, 163 F.3d at 756. The relevant inquiry in determining whether a federal statute may be enforced through Section 1983 is a determination of the intent of Congress when creating the statute. In determining Congressional intent, the Second Circuit observed that " '[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983.' " *Id.* (quoting *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 20, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981)). The court then decided that "Title IX contains a sufficiently comprehensive enforcement

scheme so as to foreclose the use of § 1983 to implement its provisions." *Id.* In conclusion, the court held that "given Title IX's administrative and judicial remedies, we believe it was Congress' scheme that a claimed violation of Title IX be pursued under Title IX and not § 1983." *Id.* at 757. The Circuit made clear however that its decision in *Bruneau* applied only to the non-individual defendants, and did "not address the extent to which Title IX subsumes a § 1983 claim against the individual defendants.... " *Bruneau*, 163 F.3d at 755.

Based on this analysis, one court in the Northern District of New York has concluded that it follows from the reasoning in *Bruneau* that a Section 1983 suit against an individual is not subsumed by Title IX. *See Cinquanti v. Tompkins–Cortland Community College*, 2000 WL 949460, *6– *7 (N.D.N.Y.2000) (finding no Title IX preclusion of Section 1983 action as to individual defendants because such defendants are not subject to suit under Title IX).

At least two circuits have reached a contrary conclusion. The Third and Seventh Circuits have both concluded that Title IX's enforcement scheme is sufficiently comprehensive so as to preclude Section 1983 suits against individual defendants. *See Pfeiffer v. Marion Center Area School District*, 917 F.2d 779, 789 (3d Cir. 1990); *Waid v. Merrill Area Public Schools*, 91 F.3d 857, 862–63 (7th Cir.1996). The Seventh Circuit reasoned on this point that Congress' decision to enforce Title IX through the granting or withholding of federal funding "indicates that Congress intended to place the burden of compliance with civil rights law on educational institutions themselves, not on the individual officers associated with those institutions." *Id.*

The reasoning in *Cinquanti* which holds that the remedial scheme of Title IX is not "sufficiently comprehensive" as to the indi-

---

of substantive due process based on sexual harassment than is required for statutory claim under Title VII). Accordingly, plain-

tiff's due process causes of action must both be dismissed (plaintiff's third and fifth causes of action).

vidual defendants so as to preclude liability under Section 1983 is adopted. Such defendants are not amenable to suit under Title IX, so it cannot be said that Title IX provides plaintiff's comprehensive remedy as against the individual defendants. Accordingly, the individual defendants' motion to dismiss plaintiff's Section 1983 claims based on the denial of equal protection must be denied.

### D. State Law Claims

Plaintiff also sues all defendants for state law claims under the New York Human Rights Law and the equal protection clause of the New York Constitution, as well in tort for defamation and intentional infliction of emotional distress.[9] Defendants raise several arguments against the validity of these state law causes of action.

#### 1. Eleventh Amendment Immunity and Qualified Immunity

■ The SUNY defendants argue that plaintiff's state law claims are barred by the Eleventh Amendment as to SUNY and SUNY–New Paltz, and by qualified immunity as to the individual defendants. Defendants argue that there has been no waiver of Eleventh Amendment immunity by New York as to these causes of action. Plaintiff argues in opposition that the New York Court of Appeals decision, *Brown v. State*, 89 N.Y.2d 172, 652 N.Y.S.2d 223, 674 N.E.2d 1129 (1996), constituted an implied waiver of such immunity.

The only federal court to directly consider this issue has decided that the *Brown* decision did not constitute an implied waiver of Eleventh Amendment immunity. *TM Park Ave. Assoc. v. Pataki*, 986 F.Supp. 96, 103–04 (N.D.N.Y.1997). Cases decided subsequent to the *Pataki* decision have concluded that the State of New York

has not waived its Eleventh Amendment immunity to suit in federal court for state common law and constitutional torts. *See Phipps v. New York State Dept. of Labor*, 53 F.Supp.2d 551, 558 (N.D.N.Y.1999) (Human Rights Law and common law claims against state barred by Eleventh Amendment immunity). The reasoning in these decisions is adopted. The New York Court of Appeals decision in *Brown* did not constitute an implied waiver of Eleventh Amendment immunity. The state law claims against the SUNY defendants must be dismissed.[10]

■ With regard to defendants' argument that the three individual SUNY defendants are entitled to qualified immunity for their conduct in the instant case, if (as plaintiff asserts) Dean Varbero, Prof. Brownstein, and Dean Benjamin consciously engaged in practices and adopted policies to prevent victims of sexual harassment from bringing formal complaints against faculty members, then this doctrine would not apply because a "reasonable official would understand" that such conduct would violate plaintiff's constitutional or statutory rights. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Accordingly, at this stage of the litigation, the individual SUNY defendants must not be dismissed on the basis of qualified immunity.

#### 2. New York Human Rights Law

■ The standard governing a sex discrimination claim under the HRL is also identical to the standard governing Title VII claims. *See Tomka*, 66 F.3d at 1305 n. 4. Therefore, as set forth above, Prof Young's alleged conduct would establish HRL liability against him. The other individual defendants Dean Varbero, Prof. Brownstein, and Dean Benjamin contend that a mere failure to investigate complaints of sexual harassment does not, by

9. At oral argument on the instant motion, Hayut conceded that her causes of action for defamation and intentional infliction of emotional distress are time-barred. Accordingly, plaintiff's eighth and ninth causes of action are hereby dismissed as to all defendants.

10. Plaintiff's fourth, fifth, sixth, seventh, eighth, and ninth causes of action.

itself, violate the HRL, citing *Lewis v. Triborough Bridge and Tunnel Authority*, 77 F.Supp.2d 376, 383 (S.D.N.Y.1999), as authority for that proposition. Defendants' argument fails for two reasons.

First, this case does not involve a mere failure to investigate Hayut's claims. Her complaint alleges that defendants Dean Varbero, Prof. Brownstein, and Dean Benjamin adopted policies and procedures intended to frustrate the bringing of harassment claims against faculty members. Such allegations are sufficient to state a violation of the HRL on the grounds that these defendants aided and abetted the denial by Prof. Young of SUNY–New Paltz's facilities on the basis of plaintiff's sex. *See* N.Y. Executive Law §§ 296(4), 296(6).[11] Whether or not these allegations can ultimately be substantiated is not relevant on this motion. *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996) ("Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal.") (citing *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995)).

Second, defendants' reliance on *Lewis* is misplaced. The court in *Lewis* expressly declined to hold that allegations of a failure or refusal to investigate claims of sexual harassment were insufficient, as a matter of law, to state a violation of section 296(6) of the Human Rights Law. *Lewis*, 77 F.Supp.2d at 381. The court observed that while "neither the Second Circuit nor the New York Court of Appeals has directly addressed the issue, numerous district courts have refused to dismiss 'aiding and abetting' claims against supervisors who were informed about offensive conduct but failed to take appropriate investigative or remedial measures." *Id.* (citing, *e.g.*, *Romero v. Howard Johnson Plaza Hotel*, 1999 WL 777915 (S.D.N.Y.1999); *Hicks v. IBM*, 44 F.Supp.2d 593 (S.D.N.Y.1999); *Rosetti v. Hudson Valley Community College*, 1997 WL 567936 (N.D.N.Y.1997)). Accordingly, plaintiff's allegations do state a claim under the HRL against the individual defendants in this case.

### 3. *Ministerial Neglect*

With regard to the ministerial neglect claim, plaintiff argues that such a claim could lie if SUNY or SUNY–New Paltz had detailed, nondiscretionary procedures for the investigation of discrimination complaints and Dean Varbero, Prof. Brownstein, and Dean Benjamin failed to follow these procedures. Under *Kagan v. State*, 221 A.D.2d 7, 646 N.Y.S.2d 336 (N.Y.A.D.2d Dept.1996),[12] the plaintiff's ministerial neglect claim would have some merit if the three school officials completely disregarded *nondiscretionary* procedures for the handling of discrimination complaints. Also, while the officials' conduct during the investigation would be discretionary, the obligation to commence such an investigation upon receiving a complaint would be "ministerial." Therefore, this cause of action as against Dean Varbero, Prof. Brownstein, and Dean Benjamin will not be dismissed.[13]

## IV. *CONCLUSION*

After careful consideration of the submissions of the parties, the relevant parts

---

11. Section 296(4) of the HRL makes it an unlawful discriminatory practice for an educational corporation "to deny the use of its facilities to any person otherwise qualified, by reason of his race, color, religion, disability, national origin, age or marital status." N.Y. Executive Law § 296(4). Section 296(6) makes it an unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." N.Y. Executive Law § 296(6).

12. *Kagan* dealt with the failures of prison employees to bring a complaining prisoner to see a nurse in a timely fashion, and of the nurse to refer the prisoner to a physician—when both actions were required by "protocols" adopted by the prison.

13. This cause of action (plaintiff's seventh cause of action) as against Prof. Young will be dismissed on the grounds that (1) plaintiff has failed to allege any duty on the part of Prof. Young to investigate harassment claims; and (2) it would defy logic for Hayut to allege that

of the record, the applicable law and the oral arguments, it is hereby

ORDERED that

1. Defendant Alex Young's motion to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(6) and the other defendants' motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) are GRANTED in part and DENIED in part;

2. The motions are GRANTED and the following claims are DISMISSED:

 a. Plaintiff's first cause of action (Title IX sex harassment) against defendants Alex Young, Richard Varbero, Lewis Brownstein, and Gerald Benjamin;

 b. Plaintiff's second cause of action (Section 1983—federal equal protection), fourth cause of action (state constitutional tort—equal protection), and sixth cause of action (New York Human Rights Law) against defendants State University of New York and State University of New York College at New Paltz;

 c. Plaintiff's third cause of action (Section 1983—federal due process), fifth cause of action (state constitutional tort—due process), eighth cause of action (intentional infliction of emotional distress), ninth cause of action (defamation), and tenth cause of action (injunctive relief) in their entirety; and

 d. Plaintiff's seventh cause of action (ministerial neglect) against defendants State University of New York, State University of New York College at New Paltz, and Alex Young.

 e. Plaintiff's second cause of action (Section 1983—federal equal protection) and fourth cause of action (state constitutional tort—equal protection) to the extent that these causes of action are based upon religion and national origin discrimination.

3. The remainder of defendants' motions are DENIED, and this action shall proceed with respect to the following claims:

 a. Plaintiff's first cause of action (Title IX) against defendants State University of New York and State University of New York College at New Paltz;

 b. Plaintiff's second cause of action (Section 1983—federal equal protection), fourth cause of action (state constitutional tort—equal protection), and sixth cause of action (New York Human Rights Law) against defendants Alex Young, Richard Varbero, Lewis Brownstein, and Gerald Benjamin; and

 c. Plaintiff's seventh cause of action (ministerial neglect) against defendants Richard Varbero, Lewis Brownstein, and Gerald Benjamin.

4. Defendant Alex Young shall file and serve an answer to the remaining claims against him on or before January 4, 2001.

IT IS SO ORDERED.

Prof. Young had a ministerial duty to investigate his own harassment.