Jeanette PARRA, Plaintiff,

v.

CITY OF WHITE PLAINS, White Plains Police Department and/or Department of Public Safety, and Lieutenant Larry Johnson, Individually, Sergeant Joseph Castelli, Individually, Sergeant Howard Tribble, Individually, Lieutenant Elizabeth Seit, Individually, Police Commissioner David Chong, Individually, Police Chief James Bradley, Individually, and Assistant Police Chief Ann Fitzsimmons, Individually, Defendants.

No. 13 CV 5544(VB).

United States District Court, S.D. New York.

Signed Sept. 4, 2014.

Marjorie Mesidor, Nicole Ann Welch, Phillips & Associates, Attorney at Law, PLLC, New York, NY, for Plaintiff.

John Martin Flannery, Wilson Elser Moskowitz Edelman & Dicker LLP, Stamford, CT, Lalit Kumar Loomba, Peter Alexander Meisels, Wilson Elser, Moskowitz Edelman & Dicker LLP, White Plains, NY, for Defendants.

### MEMORANDUM DECISION

BRICCETTI, District Judge.

 Plaintiff Jeanette Parra, a Hispanic woman, brings this employment discrimination action alleging defendants[1] (i) subjected her to a hostile work environment based on sexual harassment, (ii) retaliated against her for complaining about such harassment, and (iii) discriminated against her on the basis of her gender and race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); and the New York Human Rights Law, N.Y. Exec. L. § 290 *et seq.* ("NYSHRL").

Now pending is defendants' motion to dismiss the amended complaint. (Doc. # 25).

For the following reasons, defendants' motion is GRANTED in part and DENIED in part.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

### BACKGROUND

For purposes of deciding the pending motion, the Court accepts as true all well-pleaded factual allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor.

Plaintiff is a police officer in the White Plains Police Department ("Department"), where she has worked since September 2005. Throughout her employment with the Department, plaintiff alleges defendants have subjected her to a hostile work environment "based on numerous acts of sexual harassment, as well as discriminatory and retaliatory actions." (Am. Compl. ¶ 39).

Shortly after plaintiff was hired, Sergeant Joseph Castelli allegedly told her, "wait until you meet Lt. Johnson." (*Id.* ¶ 40). When they met, Johnson allegedly instructed plaintiff to call him "Big Daddy." (*Id.* ¶ 41). Soon, Johnson allegedly began asking plaintiff "when are you gonna sit on my face?" and "when are you gonna suck my dick?" and making "hand gestures simulating oral sex and masturbation." (*Id.* ¶ 43).

Johnson allegedly harassed other female police officers as well, although they are not identified by name in the amended complaint. When these officers complained, the Department allegedly "reassigned" them, but did not reassign or discipline Johnson. (*Id.* ¶ 67). As a result, Johnson allegedly continued to harass and subject plaintiff to "unwelcome[ ] touchings and attention." (*Id.* ¶ 68).

Sergeant Howard Tribble is alleged to have behaved similarly. Plaintiff alleges that throughout 2006, Tribble "frequently made unwanted sexual comments" to her, and "frequently subjected" her to "unwanted sexual touching, grabbing, and pulling, including rubbing her hands, arms, shoulders, neck, feet, head and hair." (*Id.* ¶¶ 45, 47). Plaintiff "repeatedly complained" to Tribble "that his conduct was

---

1. Under New York law, a municipal police department has no separate legal identity apart from the municipality that created it, and is thus a non-suable entity. *See Hall v. City of White Plains,* 185 F.Supp.2d 293, 303 (S.D.N.Y.2002). Accordingly, the White Plains Police Department is dismissed from this action. Plaintiff's claims against this defendant lie, if at all, against the City of White Plains.

unwelcome and unwanted, but he continued to inappropriately and illegally grab, rub, pull, and touch her, causing her extreme discomfort, embarrassment and humiliation." (*Id.* ¶ 49). When plaintiff told Tribble she planned to file a complaint about him, he allegedly "threateningly replied, 'NO YOU WON'T.'" (*Id.* ¶ 50).

Plaintiff alleges many of the incidents with Johnson and Tribble "took place in front of . . . superior officers" who did not intervene. (*Id.* ¶ 51). For instance, when plaintiff's supervisor, Lieutenant Michael Knox, first observed Tribble "groping" plaintiff, he allegedly did nothing, assuming that Tribble and plaintiff "had something going on." (*Id.* ¶ 52). But after plaintiff complained to Knox that Tribble's conduct was unwelcome, Knox submitted a complaint to the Department's Internal Affairs Bureau ("IAB") on her behalf. Even then, plaintiff alleges, "no member of the IAB ever contacted" her to discuss her complaint and no "formal investigation" was ever conducted. (*Id.* ¶¶ 53, 54). As a result, plaintiff alleges Tribble "was never reprimanded or disciplined," and his harassment continued unabated. (*Id.* ¶¶ 54, 55).

The amended complaint also alludes to two incidents involving Police Commissioner David Chong. In June 2010, Chong allegedly "displayed unwanted and inappropriate" affection toward plaintiff at a fundraising benefit. (*Id.* ¶ 70). And in March 2011, plaintiff alleges, Chong again "sexually harassed" her "with unwanted and inappropriate touching." (*Id.* ¶ 75).

Plaintiff alleges defendants also retaliated against her for complaining about sexual harassment. After plaintiff complained about Tribble in 2006, for example, she was allegedly denied "bicycle training," and has since been denied such training and other training opportunities every year. (*Id.* ¶ 98). Plaintiff also alleges she

was denied "dispatch training" months after complaining about Tribble. (*Id.* ¶ 57). As a result, plaintiff alleges she is ineligible for advancement and ill-equipped to continue in her current position.

Similarly, plaintiff alleges she applied for and was granted a "favorable transfer" to the "Neighborhood Conditions Unit" in July 2009, but Police Chief James Bradley "reversed" this transfer. (*Id.* ¶¶ 59–64). Then, in October 2009, Castelli allegedly assigned plaintiff to "the most dangerous post in the city—one that, upon information and belief, was always reserved for male officers and had never before been assigned to a female employee." (*Id.* ¶ 65). Finally, plaintiff alleges that despite her certification as a "Field Training Officer," she was denied "all requests for training and career advancement that were being offered" in 2010, among them, "a promotion to the Detectives Division." (*Id.* ¶ 71).

The amended complaint also describes an incident in March 2011 involving a traffic sergeant who is not named as a defendant here. The traffic sergeant allegedly "intimidated" plaintiff "by standing close to and over her while screaming and yelling at her" for "doubling up," or "sharing a police vehicle with another police officer." (*Id.* ¶ 72). Upon information and belief, plaintiff alleges "the similarly situated non-Hispanic male colleague" with whom she shared a vehicle was not reprimanded. (*Id.*). Although plaintiff complained to Chief Bradley about the traffic sergeant, she alleges Bradley "never responded." (*Id.* ¶ 73). Somewhat incongruously, plaintiff also alleges Bradley launched a "harassing investigation" into her complaint about the traffic sergeant, which was conducted by Castelli, Assistant Police Chief Ann Fitzsimmons, and others. (*Id.* ¶ 74). At about this time, Castelli allegedly told plaintiff "he would 'go easier on her' if she

retracted her complaint" and, referring to her complaints against Tribble and the traffic sergeant, chided plaintiff for being a "complainer." (*Id.* ¶ 76).

In October 2011, plaintiff was reassigned to "Squad 8," where she was reunited with Johnson and Tribble, and introduced to Tribble's close friend, Lieutenant Elizabeth Seit. Upon learning plaintiff and she would be working together, Seit allegedly stated, "I DON'T WANT THAT BITCH IN MY SQUAD!" (*Id.* ¶ 79). When plaintiff complained to Castelli about working with Tribble, Castelli told her Chief Bradley thought "enough time ha[d] passed and IT SHOULD BE FINE; THOSE WERE JUST JOKES." (*Id.* ¶ 77).

Soon thereafter, Lieutenant Johnson's harassment allegedly resumed. In November 2011, Johnson allegedly "ordered" plaintiff "to go to the women's locker room and surreptitiously photograph the breasts of female civilian dispatchers, as well as her own buttocks, and to deliver these nude photographs to him." (*Id.* ¶ 81). Johnson also allegedly made derogatory comments to plaintiff about other female officers, such as "I wanna hit that," and "I wanna hit her in the face with my dick and cum in her face." (*Id.* ¶ 82).

When, in October 2011, plaintiff requested reassignment away from Johnson and Tribble, Castelli allegedly told her she would have to accept a "shift change" and a "decrease in salary." (*Id.* ¶ 78).

The amended complaint refers only vaguely to several other incidents in late 2011 and early 2012 involving Johnson, Tribble, Seit, and Castelli. For instance, these defendants allegedly gave plaintiff the "silent treatment"; Seit "publically excluded" plaintiff from "off-duty functions"; Unnamed defendants "forcibly reassigned" plaintiff "to street duty, in disregard of her stated roster assignment"; Castelli "accused" plaintiff of being "unable to work

with any supervisors" within earshot of a Police Benevolent Association representative; Johnson "authorized overtime" to another female officer in order to prevent Plaintiff ... from entering Defendants' headquarters so she could exercise her duties"; Twice, Seit allegedly "withheld mandatory backup support" from plaintiff; And Johnson, Tribble, and Seit allegedly accused plaintiff of lying about having been sexually harassed and subjected her to a "malicious rumor campaign." (*Id.* ¶¶ 80, 83, 85–86).

In January 2012, plaintiff filed a "formal complaint" with Chief Bradley and Sergeant Castelli about Lieutenant Johnson, and also "submitted" a complaint to White Plains City Hall. (*Id.* ¶ 90). Although Bradley allegedly refused to meet with plaintiff about her complaint, plaintiff claims she was "harassed" by an IAB investigator soon after she filed the complaint with Bradley. A few days later, Castelli and the investigator interviewed plaintiff about Johnson. During the interview, Castelli and the investigator allegedly "visibly and audibly expressed disbelief" about plaintiff's allegations, and denied knowledge of other complaints against Johnson. (*Id.* ¶¶ 94, 95).

Plaintiff alleges she has been forced to continue to work under Johnson, Tribble, and Seit, and that Johnson continues to make comments about her, such as "I HATE THAT FUCKING BITCH." (*Id.* ¶ 97).

## DISCUSSION

### I. *Legal Standard*

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the sufficiency of the complaint under the "two-pronged approach" announced by the Supreme Court in *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d

868 (2009). First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. *Id.* at 678, 129 S.Ct. 1937; *Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir.2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Ashcroft v. Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937.

To survive a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must meet a standard of "plausibility." *Id.* at 678, 129 S.Ct. 1937; *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 564, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## II. *EEOC Time Bar*

██ A plaintiff must file a Title VII notice with the Equal Employment Opportunity Commission ("EEOC") within 300 days of a defendant's alleged discriminatory acts before pursuing a Title VII claim in federal court. 42 U.S.C. § 2000e–5(e)(1); *McPherson v. N.Y.C. Dep't of Educ.,* 457 F.3d 211, 213 (2d Cir.2006). Thus, a Title VII claim is ordinarily time-barred "if the plaintiff ... does not file a charge with the EEOC within 300 days after the alleged unlawful employment practice." *Elmenayer v. ABF Freight Sys., Inc.,* 318 F.3d 130, 133 (2d Cir.2003). For hostile work environment claims, however, "so long as one act is within the limitations period, all of the [alleged discriminatory] acts can be relied on to show a hostile work environment." *Bermudez v. City of New York,* 783 F.Supp.2d 560, 582 (S.D.N.Y.2011).

██ Here, plaintiff filed her EEOC notice on March 12, 2012. Thus, her discrimination and retaliation claims must be based on events alleged to have occurred on or after May 17, 2011, and her hostile work environment claim must include at least one act since that date.

Plaintiff's Title VII claims are timely.

First, plaintiff alleges at least two specific episodes of sexual harassment by Johnson in late 2011 (Am. Compl. ¶¶ 81, 82), and sought a transfer away from Tribble because he, too, had sexually harassed her in the past. (*Id.* ¶¶ 78, 97). These allegations permit the Court to consider similar episodes of sexual harassment alleged to have occurred prior to May 17, 2011.

Next, plaintiff alleges two timely facts suggestive of retaliation—Bradley's comment in October 2011 that Tribble's past sexual harassment of plaintiff was "just jokes" when she objected to being assigned to Tribble's squad, and Castelli's subsequent refusal to reassign her without cutting her salary. (*Id.* ¶¶ 77, 78).

Finally, plaintiff's allegation that she was denied training in 2012 (*Id.* ¶ 98) constitutes a timely allegation of adverse employment action that may support a disparate treatment claim.

The Court considers these claims in turn.

## III. *The City's Liability under Title VII, Section 1981, and the NYSHRL*

### A. *Hostile Work Environment*

██ To prevail on a hostile work environment claim, plaintiff must demonstrate

she was subjected to harassment on the basis of her gender and/or race.[2] *See Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). To do so, she must plausibly allege her workplace was permeated with "discriminatory intimidation, ridicule, and insult ... sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). "Whether offensive conduct is hostile or abusive depends on the totality of the circumstances." *Dillon v. Ned Mgmt., Inc.,* 2014 WL 583234, at \*2 (E.D.N.Y. Feb. 12, 2014) (internal quotation marks omitted).

 The sufficiency of a hostile work environment claim is analyzed both subjectively and objectively. *See Harris v. Forklift Sys., Inc.,* 510 U.S. at 21, 114 S.Ct. 367. In reviewing hostile work environment claims, courts "consider[ ] a variety of factors including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93, 102 (2d Cir.2010) (citation and internal quotation marks omitted). "Facially [sex-]neutral incidents may be included ... among the totality of the circumstances that courts consider in any hostile work environment claim, so long as

a reasonable fact-finder could conclude that they were, in fact, based on sex." *Moll v. Telesector Res. Grp., Inc.,* 760 F.3d 198, 203 (2d Cir.2014).

 Because "individuals are not subject to liability under Title VII," a successful Title VII claim requires a specific basis to impute harassment liability to an employer. *Patterson v. Cnty. of Oneida, N.Y.,* 375 F.3d 206, 221 (2d Cir.2004). Thus, under Title VII, an employer's liability for workplace harassment "may depend on the status of the harasser." *Vance v. Ball State Univ.,* —— U.S. ——, 133 S.Ct. 2434, 2439, 186 L.Ed.2d 565 (2013). If the harassing employee is a "supervisor," the employer will be strictly liable for his unlawful conduct unless "(1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) ... the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided." *Id.* "If the harassing employee is the victim's co-worker," however, "the employer is liable only if it was negligent in controlling working conditions." *Id.*

 Under the NYSHRL, "liability for an employee's discriminatory acts may not be imputed to an employer ... unless the employer became a party to it by encouraging, condoning, or approving it." *Brown v. City of New York,* 2013 WL 3789091, at \*18 (S.D.N.Y. July 19, 2013).[3]

### 1. Sexual Harassment

 Here, since Johnson's and Tribble's alleged conduct, if true, was both

---

**2.** The same standards govern hostile work environment claims under Title VII, Section 1981, and the NYSHRL. *See Rivera v. Rochester Genesee Reg'l Transp. Auth.,* 743 F.3d 11, 20 n. 4 (2d Cir.2014). However, Section 1981 deals only with race-based forms of discrimination; "sex-based discrimination is not actionable under Section 1981." *Cortes v.*

*City of New York,* 700 F.Supp.2d 474, 488 (S.D.N.Y.2010).

**3.** As discussed below, plaintiff has failed to allege conduct violative of Section 1981. Thus, the Court will not consider the issue of imputed Section 1981 liability.

pervasive *and* severe, plaintiff has plausibly alleged a hostile work environment.[4] *See, e.g., Bethea v. City of New York,* 2014 WL 2616897, at *5 (E.D.N.Y. June 12, 2014) (plaintiff police officer plausibly alleged hostile work environment based on sergeant's graphic, persistent sexual taunting).

At issue, then, is whether Johnson's and Tribble's alleged conduct may be imputed to the City under Title VII and the NYSHRL.

Even assuming Johnson and Tribble were plaintiff's co-workers, defendants cannot establish from the pleadings alone that the Department's response to each alleged incident of harassment was reasonable as a matter of law.

To be sure, the Department appears to have investigated a number of plaintiff's complaints reasonably promptly. But the Court cannot deem reasonable as a matter of law the Department's decision to assign plaintiff to Squad 8. with Tribble (against whom she had already filed a sexual harassment complaint) and Johnson (about whom several women had allegedly complained). Nor does Bradley's rationale for assigning plaintiff to Squad 8–that Johnson's and Tribble's comments were "just jokes" and that "enough time had passed" for plaintiff to resume working with them—appear reasonable from the face of the pleadings.

Because plaintiff has plausibly alleged the Department may have been negligent in responding to her complaints of harassment, she has pleaded a basis to hold the City liable for Johnson's and Tribble's conduct under Title VII. And because plaintiff plausibly alleges Bradley condoned her assignment to Squad 8, she has also plausibly alleged the City's liability under the NYSHRL. *See Guzman v. Macy's Retail Holdings, Inc.,* 2010 WL 1222044, at *11 (S.D.N.Y. Mar. 29, 2010) (employer liability plausibly alleged when senior manager to whom plaintiff complained of discrimination "not only refused to investigate but threatened her with termination if she made further complaints").

### 2. *Racial Harassment*

In contrast, plaintiff's race-based hostile work environment claims are not plausibly pleaded because plaintiff offers little if any reason to believe defendants' actions had anything to do with her race. *See, e.g., Hill v. Rayboy–Brauestein,* 467 F.Supp.2d 336, 360 (S.D.N.Y.2006) ("When a person only makes general allegations that African–Americans are treated differently in the workplace, those allegations are insufficient to support a hostile work environment claim.").

Thus, plaintiff's race-based hostile work environment claims are dismissed.

### B. *Retaliation*

A *prima facie* case of retaliation requires plaintiff to show (i) she engaged in protected activity, (ii) the employer was aware of the activity, (iii) the employer took an adverse action against her, and (iv) a causal connection exists between the protected activity and the adverse action. *Feingold v. New York,* 366 F.3d 138, 156 (2d Cir.2004). "The onus is on the speaker to clarify to the employer that [s]he is complaining of unfair treatment due to [her] membership in a protected class and that [s]he is not complaining merely of unfair treatment generally." *Aspilaire v. Wyeth Pharm., Inc.,* 612 F.Supp.2d 289, 308–09 (S.D.N.Y.2009).

---

**4.** The allegations involving Chong, however, are far too vague to support a hostile work environment claim under any of the statutes at issue.

"[U]nchecked retaliatory co-worker harassment, if sufficiently severe, may constitute adverse employment action so as to satisfy the second prong of the retaliation *prima facie* case." *See Richardson v. N.Y. Dep't of Corr. Serv.,* 180 F.3d 426, 446 (2d Cir.1999), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).

Here, Bradley allegedly commented that Tribble's past harassment of plaintiff was "just jokes." And when plaintiff asked to be separated from Johnson and Tribble, Castelli allegedly told her she would have to accept a pay cut. At the motion to dismiss stage, these allegations plausibly suggest Bradley and Castelli intended to punish plaintiff for complaining of discrimination. *See id.* (unchecked co-worker harassment may represent adverse action for purposes of gender-based retaliation claim).

Thus, plaintiff has stated a claim for gender-based retaliation under Title VII and the NYSHRL.

Because the amended complaint does not plausibly allege plaintiff ever complained of race-based discrimination, however, plaintiff cannot establish a race-based retaliation claim.

### C. *Disparate Treatment*

Disparate treatment claims brought under Title VII, Section 1981, and the NYSHRL are all analyzed under the same standard. *See, e.g., Bowen–Hooks v. City of New York,* 13 F.Supp.3d 179, 209 & n. 19, 2014 WL 1330941, at *16 & n. 19 (E.D.N.Y. Mar. 31, 2014).

To state a claim for race—or gender-based discrimination, plaintiff must allege (i) she is a member of a protected class, (ii) she was qualified for the position she held, (iii) she suffered an adverse employment action, and (iv) the adverse action took place under circumstances giving rise to an inference of discrimination. *Reynolds v. Barrett,* 685 F.3d 193, 202 (2d Cir.2012).

"If a comparison with another employee is to lead to an inference of discrimination it is necessary that the employee be similarly situated in all material respects." *Staff v. Pall Corp.,* 233 F.Supp.2d 516, 536 (S.D.N.Y.2002) (internal quotation marks omitted).

#### 1. *Gender*

Because plaintiff has stated a hostile work environment claim under Title VII and the NYSHRL, she has already plausibly pleaded "a form of gender-based discrimination." *Bermudez v. City of New York,* 783 F.Supp.2d 560, 585 (S.D.N.Y. 2011). To state a separate gender discrimination claim, plaintiff must plead "a separate and distinct *prima facie* case," alleging an adverse action *beyond* the creation of a hostile work environment. *Bethea v. City of New York,* 2014 WL 2616897, at *6 (E.D.N.Y. June 12, 2014).

Whereas hostile work environment claims consider the "workplace environment as a whole," disparate treatment claims require a tangible, "discrete harm[ ] such as hiring or discharge." *Raniola v. Bratton,* 243 F.3d 610, 617 (2d Cir.2001).

Here, plaintiff alleges only one plausible adverse action beyond the creation of a hostile work environment: the denial of training opportunities. But plaintiff does not allege she was denied training *because of* her gender; she alleges defendants denied her training in "retaliation for her complaints about ... unlawful sexual harassment." (Am. Compl. ¶ 98). Thus, the denial of training provides additional support for plaintiff's successful re-

taliation claim, but does not plausibly suggest disparate treatment. *See Patane v. Clark*, 508 F.3d 106, 112 (2d Cir.2007) ("The *sine qua non* of a gender-based discriminatory action claim under title VII is that the discrimination must be *because of sex*." (internal quotation marks omitted)).

Accordingly, plaintiff fails to state a gender discrimination claim under either Title VII or the NYSHRL. *See, e.g., Bethea v. City of New York*, 2014 WL 2616897, at *6 (plaintiff plausibly stated hostile work environment claim but could not state "separate and additional claim of gender discrimination" based on same facts); *Bermudez v. City of New York*, 783 F.Supp.2d at 585 (same).

### 2. *Race*

■ As with gender discrimination claims, race-based disparate treatment claims require a showing of tangible adverse action in areas such as hiring, firing, compensation, and promotion. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).

■ Here, plaintiff alleges she was reprimanded after sharing a police vehicle with a "non-Hispanic male colleague" who was not so reprimanded. Elsewhere, plaintiff alleges Bradley "never responded" to her "requests for assistance" with her complaints, but "routinely responded to such requests ... from similarly situated non-Hispanic male colleagues." (Am. Compl. ¶ 73).

These allegations are insufficient.

■ Without more, a reprimand is not an adverse action. *Honey v. Cnty. of Rockland*, 200 F.Supp.2d 311, 320 (S.D.N.Y.2002) ("[R]eprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other negative re-

sults such as a decrease in pay or being placed on probation."). And because plaintiff claims she was "harassed" by investigators each time she complained to Bradley, the allegation that Bradley never responded to plaintiff's "requests for assistance" is implausible.

More fundamentally, because plaintiff identifies her "similarly situated non-Hispanic male colleagues" only categorically, she fails to allege a valid comparator, and thus provides no basis to infer she was treated differently because of her race.

Thus, plaintiff fails to state a claim for race discrimination. *See Ortega v. N.Y.C. Off–Track Betting Corp.*, 1999 WL 342353, at *5 (S.D.N.Y. May 27, 1999) (dismissing race-discrimination claim based on conclusory allegations that Hispanic female plaintiff was treated differently from non-Hispanic males).

### IV. *Individual Liability Under the NYSHRL*

■ "[A]n employee may not be individually subject to suit as an employer under Section 296(1) of the [NYS]HRL 'if he [or she] is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others.'" *Lewis v. Triborough Bridge & Tunnel Auth.*, 77 F.Supp.2d 376, 379 (S.D.N.Y.1999) (quoting *Patrowich v. Chem. Bank*, 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984)). Conversely, "individuals may be held liable given sufficient supervisory power." *Dundas v. Convalescent Hosp. for Children*, 1995 WL 813721, at *8 (W.D.N.Y. Mar. 9, 1995).

■ But a co-worker who "lack[s] the authority to either hire or fire the plaintiff" may still be held liable as an aider-abettor under NYSHRL § 296(6) if he "actually participates in the conduct giving

rise to a discrimination claim." *Feingold v. New York,* 366 F.3d 138, 158 (2d Cir. 2004). (internal quotation marks omitted).[5] "In this regard, the individual defendant, who may have personally committed the discrimination, is not held liable for aiding and abetting his own actions, but instead, is deemed liable for aiding and abetting the primary violation by the employer." *Rojas v. Roman Catholic Diocese of Rochester,* 557 F.Supp.2d 387, 393–94 (W.D.N.Y.2008). "[A] supervisor's failure to take adequate remedial measures" in response to a complaint of discrimination has been deemed "actual participation" under NYSHRL § 296(6). *Lewis v. Triborough Bridge & Tunnel Auth.,* 77 F.Supp.2d at 379.

The amended complaint plausibly alleges primary liability as to Castelli and Bradley, and aider-abettor liability as to Johnson, Tribble, Castelli, and Bradley.

■■■ As to primary liability, plaintiff plausibly alleges Castelli and Bradley "recklessly disregarded [her] repeated complaints" of discrimination by *reuniting* her with her alleged harasser, Tribble, and then refusing to reassign her away from him without cutting her salary. *Id.* at 382.

■■■ As to aider-abettor liability, Johnson's and Tribble's alleged harassment of plaintiff is the basis for the City's "primary" violation of the NYSHRL. In addition, plaintiff plausibly alleges Castelli rebuked her for complaining about Tribble's harassment and refused to transfer her to another squad without effectively demoting her. Finally, plaintiff plausibly alleges Bradley was aware Tribble had previously harassed her when he approved her assignment to Squad 8.

Thus, plaintiff has plausibly alleged Johnson, Tribble, Castelli, and Bradley aided and abetted the City's violations of the NYSHRL.

## CONCLUSION

Defendants' motion to dismiss is GRANTED as to (i) plaintiff's race-based hostile work environment, retaliation, and disparate treatment claims, (ii) plaintiff's gender-based disparate treatment claim, and (iii) plaintiff's aider-abettor claims against individual defendants Seit, Chong, and Fitzsimmons.

Defendants' motion to dismiss is DENIED as to (i) plaintiff's gender-based hostile work environment and retaliation claims, (ii) plaintiff's NYSHRL claims against Castelli and Bradley, individually, and (iii) plaintiff's NYSHRL aider-abettor claims against individual defendants Johnson, Tribble, Castelli, and Bradley.

The Clerk is instructed to terminate the pending motion. (Doc. # 25).

SO ORDERED.

---

**5.** NYSHRL § 296(6) makes it "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."